Lenford A. BUCKNER, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 57885.

Missouri Court of Appeals,
Western District.

Submitted July 31, 2000.

Decided Nov. 14, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 26, 2000.

Application for Transfer Denied
Feb. 13, 2001.

Kent Denzel, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

Before HOLLIGER, P.J., BRECKENRIDGE and SMART, JJ.

JAMES M. SMART, Jr., Judge.

Lenford Buckner appeals the denial of his Rule 24.035 motion. Buckner is serving a seven-year sentence running concurrently with a previous sentence as a result of his plea to possession of a controlled substance under Section 195.202 RSMo 1994. Buckner alleges he received ineffective assistance of counsel because his counsel failed to inform him that a motion to suppress evidence could be filed in his case. Buckner accordingly alleges his decision to plead guilty was not informed.

This is Buckner's second appeal of his Rule 24.035 motion. This court remanded the case for an evidentiary hearing in *Buckner v. State,* 995 S.W.2d 47 (Mo.App. 1999).

### Factual Background

On September 22, 1997, at 2:33 a.m. the Sedalia police department received an anonymous "Crime Stoppers" call indicating that a man was selling drugs in the area of Pettis and Osage Streets. Officer Westmoreland responded to the location. While Officer Westmoreland was en route, the same caller informed the dispatcher that the person selling the drugs got into a "70's model vehicle" with another person, and was leaving the area. Almost immediately thereafter, as Officer Westmoreland was approaching the vicinity, he saw a "70's model Chevrolet Impala" occupied by two men pass him and turn onto another street. He turned and followed a short distance, and then stopped the car. There was no other traffic in the area at that time. The car was stopped near Ohio and Jefferson, about two blocks from Osage and Pettis. The area was a residential neighborhood. There were no other vehicles observed in the area. The officer did not observe any traffic violation, drug sales or other unlawful behavior. Officer Westmoreland testified that when he stopped the car, the dispatcher informed him the caller confirmed that he had stopped the correct vehicle. It is unclear if this was a separate call by the "Crime Stoppers" caller or a continuation of the earlier call. Officer Westmoreland also testified that the dispatcher informed him that this "Crime Stoppers" caller was the same caller who had provided a tip which resulted in an arrest earlier in the evening.

After stopping the car, Officer Westmoreland and another officer who arrived on the scene ordered the two men, one of whom was Buckner, to exit the vehicle. They were "patted down." Officer Westmoreland discovered drugs and drug paraphernalia on Buckner. Drugs were also discovered in the car when it was searched. Buckner was subsequently charged by indictment with the Class A felony of possession of a controlled substance (cocaine). Buckner was also charged as both a prior and persistent drug offender in the same indictment. On December 15, 1997, Buckner agreed to plead guilty to an information filed by the state the same day charging him with the Class B felony of possession of a controlled substance (cocaine) and being a prior drug offender. Under the terms of the plea agreement Buckner was sentenced to a term of seven years to run concurrently with the sentence he was serving for a previous offense of selling drugs.

At the evidentiary hearing on the Rule 24.035 motion, Buckner testified that his trial counsel did not discuss with him the possibility of filing a motion to suppress the state's evidence against him. Buckner further testified that if his trial attorney had advised him of the nature of a motion to suppress and the likelihood of success, he would not have pleaded guilty. Buckner also denied that his previous exposure to the legal system (two prior drug convictions, including serving time in prison) gave him any knowledge or insight as to what a motion to suppress was or that it might be appropriate to use one prior to his plea.

Buckner's trial counsel also testified at the evidentiary hearing. Testifying only about twenty-one months after the guilty plea, counsel testified he "truly [had] difficulty remembering representing Mr. Buckner." Counsel, who had been brought in because Buckner's original counsel had a conflict, testified that he had no specific recollection about discussing a motion to suppress with Buckner, but said that if he had, it "would have been in a cursory fashion." Counsel did believe, however, that the fact the search was based upon an anonymous caller would have caught his eye. Counsel testified he would have examined the police reports, and he believed Buckner would also have been provided copies of those reports. Counsel testified that the driving force in the case was the plea bargain that was being offered and the limited time the offer was open.

The motion court denied Buckner's 24.035 motion, essentially holding that a motion to suppress would have been unsuccessful.

## Standard of Review

In order to defeat a motion court's denial of a Rule 24.035 motion for post-conviction relief, Buckner has the burden of proving by a preponderance of the evidence that the motion court's ruling was "clearly erroneous." Rule 24.035(k); *Sams v. State*, 980 S.W.2d 294, 296 (Mo. banc 1998). In order to find the motion court's ruling clearly erroneous, this court must be under the "definite and firm impression that a mistake has been made." *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996).

## Analysis

Buckner claims he was denied effective assistance of counsel because his trial attorney failed to inform him of the possibility of filing a motion to suppress the state's evidence prior to Buckner pleading guilty. In order to prove ineffective assistance of counsel, Buckner must meet the two prongs of the *Strickland* test originally set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Missouri Supreme Court in *Sanders v. State*, 738 S.W.2d 856, 857–58 (Mo. banc 1987). A movant must show (1) that his "attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances," and (2) that this failure resulted in prejudice to the defendant. *State v. Twenter*, 818 S.W.2d 628, 635 (Mo. banc 1991). If the movant fails to satisfy either prong of the test, the other need not be considered. *State v. Whitfield*, 939 S.W.2d 361, 369 (Mo. banc 1997).

Prejudice is established in a guilty plea case when the defendant proves that but for the errors of counsel, he would not have pleaded guilty and would have demanded a trial. *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997) (citing *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). "If conviction results from a guilty plea, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." *Id.* ( citing *Hagan v. State*, 836 S.W.2d 459, 463 (Mo. banc 1992)).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction ..., and it is all too easy for a court ... to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. "It is presumed that counsel performed effectively; the movant assumes a heavy burden in attempting to overcome this strong presumption by a preponderance of the evidence." *State v. Holcomb*, 956 S.W.2d 286, 295 (Mo.App.1997).

The decision as to whether to file a motion to suppress is a matter of trial strategy and generally will not be questioned in a post-conviction relief proceeding. *State v. Neal*, 849 S.W.2d 250, 258 (Mo.App.1993). For counsel to be found ineffective for failure to advise concerning a motion to suppress, there must be shown to have been a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992) (not ineffective for failing to investigate and file a meritless motion to suppress defendant's confession).

In this case, trial counsel's testimony was that although he believed he would have recognized the issue concerning the legality of the seizures because the reference to the anonymous call would have caught his eye, he could not specifically remember discussing a motion to suppress. He surmised that any discussion with Buckner about a motion to suppress would have been cursory. Trial counsel was faced with a client who had multiple prior drug convictions and was initially charged with a Class A felony carrying a possible maximum term of up to 30 years or life. Counsel took the case over from another

attorney after that attorney developed a conflict. The testimony at the motion hearing (and copies of correspondence from the prosecutor) indicated that the prosecutor was trying to dispose of this case quickly and informed counsel the offer would be withdrawn if not accepted by a specified date (a practice which, according to counsel, was not unusual).[1] The risk of a lengthy sentence and the prior offender status of his client, coupled with the limited time frame of the offer, presumably played a role in the recommendations trial counsel made to Buckner.

If Buckner's testimony is believed, he was never informed of the possibility of a motion to suppress. But if Buckner is disbelieved and counsel is believed, the court could conclude that the facts of the stop and search would have made it probable that counsel would have considered the potential merit of a motion to suppress, and the court could further conclude that the opportunity to file the motion would have been discussed in a cursory fashion with Buckner. There is no contention here that a "cursory" discussion of the motion to dismiss would necessarily have been inadequate.

However, the motion court made no specific finding on the credibility issue. The court instead addressed the issue of prejudice, reasoning that even if such a motion had been filed, the motion would have failed. The motion court concluded that (1) because the informant's information was obviously first hand, not hearsay; (2) because the vehicle observed was similar to the one described by the informant; (3) because the informant (who was apparently in a position to see the stop of the vehicle) advised the police they had in fact stopped the correct vehicle; and (4) because the officer had knowledge that the same informant had previously, the same evening, provided accurate information

---

1. The testimony at the hearing on the post-conviction motion indicated that counsel had several years of previous work as a defense counsel prior to this case, making it more likely that he was capable of discerning between empty threats to withdraw an offer and honest negotiations.

leading to the arrest of another person, the police had a reasonable basis to stop and frisk Buckner. The motion court generally cited three cases for support. Those cases are *State v. Perry*, 499 S.W.2d 473 (Mo.1973); *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975) and *State v. Berry*, 801 S.W.2d 64 (Mo. banc 1990).

Buckner argues that the motion court erred in relying upon *Perry, Wiley*, and *Berry* because subsequent to those cases Missouri has heightened the scrutiny of actions taken based upon information from anonymous informants, citing *State v. Franklin*, 841 S.W.2d 639 (Mo. banc 1992) and *State v. Miller*, 894 S.W.2d 649 (Mo. banc 1995). Both *Franklin* and *Miller* involved, in part, motions to suppress based upon the fact that the arresting officer had stopped a vehicle and made a subsequent search based upon a "dispatch" or information from another officer. The Missouri Supreme Court in each of these cases applied the *Hensley* test, as was set forth by the United States Supreme Court in the case of *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Footnote six of *Franklin* states as follows:

> If a dispatch is based upon information provided by another police officer, the court looks to whether the collective information known to all officers involved in the stop amounted to reasonable suspicion. *United States v. De Leon Reyna*, 898 F.2d 486, 489 (5th Cir.1990). If the dispatch is based upon information obtained from an identified informant, courts examine whether the information was known to the police to be reliable. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). *If the information was obtained from an anonymous informant, the question is whether the police corroborated the details of the tip before*

> *making the stop. Alabama v. White*, 496 U.S. 325, 325–27, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990).

*Franklin*, 841 S.W.2d at 644, n. 6. (emphasis added).

Prior to *Franklin*, Missouri cases had suggested that anonymous tips were reliable as a matter of law. *See State v. Fernandez*, 691 S.W.2d 267, 269 n. 2 (Mo. banc 1985). In *White* the United States Supreme Court made it clear that not all anonymous tips are reliable and that courts must consider the facts known to the officer from personal observation to determine if the stop was justified by reasonable suspicion.[2] *Franklin*, 841 S.W.2d at 647 n. 7.

In *Franklin* the arresting officer received a dispatch of a "party armed, occupying a black 1984 Pontiac Fiero in the area of 4200 East 60th Terrace." When the officer proceeded to the area, he saw a black Fiero and stopped the vehicle. *Franklin*, 841 S.W.2d at 640. There was no evidence that the radio dispatch was issued on the basis of reasonable suspicion. Nor did the officer, independent of the dispatch, observe conduct to justify the stop. *Id.* at 645. The search results were ordered suppressed. *Id.*

In *Miller*, Detective Himmel called Officer Thomas in regard to narcotics being transported in the area of "Rainbow Village Trailer Court." Officer Thomas relayed the information in person to Officer Robinson that a red Nissan Sentra, belonging to Romona Tope, with a Missouri license plate number VJS976, would be transporting controlled substances and that the car would be located in the vicinity of the Rainbow Village Trailer Court. *Miller*, 894 S.W.2d at 650. Officer Robinson, with assistance from Officer McDonald, proceeded to the vicinity of Rainbow Village and just northeast of the trailer court stopped a vehicle matching

---

**2.** The concept of a limited stop based upon "reasonable suspicion" is articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion" is not as high a standard as the "probable cause" necessary for a full arrest. *See Franklin*, 841 S.W.2d at 641.

the description. *Id.* As in *Franklin,* the record was silent as to origin of the tip. *Id.*

 The Missouri Supreme Court stated in *Miller* at 654:

> In *White* [citing *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ] the detailed information given and the officer's corroboration of the events allowed the officer to come to the frame of mind that the tip was more than a prank; the tipster had inside information that predicted future behavior. This alone increases the likelihood that the vehicle would be carrying what the tipster said it would such that a *Terry* stop is justified. It is essential, however, that the tip include detailed information that demonstrates a special familiarity with the affairs of the object of the tip.

In comparing the facts of *Miller* with the facts of *Franklin,* the Court went on to make clear that an anonymous tip indicating merely that a particular vehicle in a specific area may be involved in improper activities, without more, is not enough for "reasonable suspicion." *Miller,* 894 S.W.2d at 654. This same principle was confirmed recently in the United States Supreme Court case of *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In that case, an anonymous caller reported to police that there was a young man carrying a gun at a particular bus stop. He was described only as a young black male wearing a plaid shirt. The officers approached three young men, one of whom (J.L.) had on a plaid shirt, frisked him, and found a firearm. Because the informant's tip provided no other indicia of reliability beyond the description of the location, the young man and the shirt, the court said that such information, standing alone, would not have justified a "Terry" stop. *Id.* at 1378–79. The reasonable suspicion which must be demonstrated requires that a tip be "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 1379.

Buckner contends that in this case the police responded only to an area with a description of a vehicle. The tip provided no description of the alleged drug sales. The tip demonstrated no familiarity with Buckner or his affairs. Further, the tip provided no prediction of Buckner's future behavior, and the police officer did not have any independent knowledge or observation of criminal activity to justify the stop and search. Buckner concludes, therefore, under *Franklin* and *Miller,* that if a motion to suppress had been filed, the evidence would have been suppressed and the case against Buckner would have most likely have been dismissed. Buckner thus argues he was prejudiced by his trial counsel's actions.

 The state, on the other hand, argues that when the anonymous tipster is a known informant who has provided reliable information in the past, and the information is immediately verifiable at the scene, there is enough indicia of reliability to justify a stop, citing *Adams v. Williams,* 407 U.S. 143, 146–147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Here, the tipster not only was obviously an eyewitness to what was going on, and continued maintaining contact with the police, but the informant had previously provided information to police that led to an actual arrest of another individual by the same officer earlier in the evening. Officer Westmoreland testified that the same caller had informed the dispatcher earlier that night that there was a man selling drugs on another street, that the man had drugs in his possession, and that he had a 9 m.m. pistol in his left back pocket. Westmoreland and others proceeded to that location and discovered a man named Boggs whom they ended up arresting. Boggs possessed both drugs (cocaine) and, in his left back pocket was a .22 semiautomatic pistol that, according to Westmoreland, looked like a 9 m.m. pistol. Officer Stewart, who conducted the search in Westmoreland's presence, found three foil balls containing a white grainy rock substance (cocaine). Given the totality of

the circumstances, the state argues, the stop and frisk of Buckner was justified and reasonable. Buckner responds that the fact the tipster was an eyewitness does not equate to reliability. We agree with that statement, but we must also note that this is a case in which the eyewitness has apparently provided reliable information previously. Buckner also points out that Officer Westmoreland did not personally find drugs on Boggs, the person who was arrested earlier (the drugs were discovered by another officer who assisted in the arrest). We do not believe that the fact that Westmoreland did not personally discover the drugs is material, as long as the earlier tip was substantiated. Moreover, the discovery of the weapon in the left back pocket confirms reliability. Justice Kennedy, concurring in *Florida v. J.L.*, made the observation that a tip might be anonymous in some sense yet have other features supporting reliability so that the tip provides a basis for police action:

> For example, if an unnamed caller with a voice which sounds the same each time tells police on two successive nights about criminal activity which in fact occurs each night, a similar call on the third night ought not be treated automatically like the tip in the case now before us. In the instance supposed, there would be a plausible argument that experience cures some of the uncertainty surrounding the anonymity, justifying a proportionate police response.

*Id.* at 1381.

The motion court, as we have noted, chose to address only the legal issue of prejudice. The standard of review, even as we look at the motion court's evaluation of the likelihood of success of a motion to suppress, is whether the motion court's decision was "clearly erroneous." In this regard, it seems critical that the state was able to show that the arresting officer

knew that this particular caller had provided reliable information which led to the arrest of Jeffrey Boggs, who possessed both cocaine and a pistol, at another location earlier in the evening. Apart from that factor, it may have been unlikely that there would have been "reasonable suspicion" justifying the stop and frisk.[3] However, the previous experience with this caller provided strong indication that this not only was not a prank, but that the caller knew what he or she was talking about. Further, the length and persistence of the contact of the caller's communication tended to further suggest reliability. The motion court could reasonably have concluded that if a motion to suppress had been filed, it would have been futile. We do not think that it can be said that we have a firm and definite impression that a mistake has been made in this case. The motion court was not hearing a motion to suppress. Rather, it was determining the reasonable *likelihood of success* if such a motion had been filed in the case. The motion court was thus trying to decide whether, if a motion had been filed, the state could at that time have presented information which would have demonstrated "reasonable suspicion" within constitutional standards.

This court is not left with a "definite and firm impression" that the motion court was wrong. The motion court's decision denying the 24.035 motion should be affirmed.

### Conclusion

The decision of the motion court is affirmed.

HOLLIGER and BRECKENRIDGE, JJ., concur.

---

**3.** No argument is raised that the officer's actions were not proportionate to his "reasonable suspicion." The testimony indicated the officer stopped the car, asked the occupants to exit, and then "patted them down," finding drug paraphernalia and drugs on Buckner.

Presumably, the "pat down" was a check for weapons because of a reasonable apprehension of possible danger in connection with investigating the men. *Terry,* 392 U.S. at 24, 88 S.Ct. 1868.