Randall BROWN, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 58341.

Missouri Court of Appeals,
Western District.

April 24, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2001.

Application for Transfer Denied
June 26, 2001.

Andrew A. Schroeder, Asst. Public Defender Office, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for Respondent.

PAUL M. SPINDEN, Chief Judge.

Randall Brown appeals from the circuit court's judgment to deny his Rule 24.035 postconviction relief motion after an evidentiary hearing. Brown asserts that the circuit court erred in accepting his guilty plea to the charge of trafficking in the first degree because no factual basis existed for the plea.[1] We agree and reverse and remand for the circuit court to vacate and set aside Brown's guilty plea.

Our review of a circuit court's ruling on a Rule 24.035 motion is limited to determining whether its findings and conclusions are clearly erroneous. Rule 24.035(k). In response to Brown's claim that no factual basis existed for his plea, the circuit court said:

> Although Movant's plea agreement was not initially specifically announced as such, the transcript of the plea proceeding reflects that his plea of guilt was entered and treated by this Court and all parties as an *Alford* plea. Immediately following Movant's lengthy recitation and discourse with this Court of the events leading up to and including, the circumstances of the police raid on his home and his arrest ..., the plea proceeding transcript reflects a detailed and lengthy summary by the prosecutor of the additional evidence the State would present at trial in support of the charges against Movant. This evidence, which clearly constituted the elements of the offenses with which Movant stood charged, was also clearly sufficient for submission to a jury.... Notwithstand-

---

1. Brown also contends that he rendered his guilty plea to trafficking in the first degree involuntarily because he received ineffective assistance of counsel. He asserts that his attorney misled and induced him into pleading guilty to the offense by telling him that, under the concept of accomplice liability, the state could prove his guilt based upon nothing more than his act of cleaning up a methamphetamine lab. Because, however, we conclude that a factual basis did not exist for the plea, we need not address this contention in this appeal.

ing Movant's protestation of innocence and disagreement with the State's evidence, the plea proceeding transcript next reflects Movant's unequivocal agreement that he would more than likely be convicted as charged upon presentation ... of the State's evidence in the event he proceeded to trial, and he further unwaveringly assured this Court that he believed it was in his best interest to plead guilty to the minimum sentences offered by the State.....

A defendant's denial of guilt at the time he enters a plea of guilty, does not invalidate the plea.... So long as a Court has before it facts constituting the crime to which the defendant is pleading guilty, which may be established by a prosecutor's statement that he is prepared to prove such facts, a sufficient factual basis exists for acceptance of a guilty plea.....

The record here clearly reflects that this Court had before it a sufficient factual basis to support acceptance of Movant's plea of guilt to the offense charged.

▆▆▆ Rule 24.02(e) says, "The court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." Before accepting the guilty plea, the circuit court must "determine facts which defendant admits by his plea and that those facts would result in defendant['s] being guilty of the offense charged." *Hoskin v. State*, 863 S.W.2d 637, 639 (Mo.App.1993). If the facts presented to the court during the guilty plea hearing do not establish the commission of the offense, the court should reject the guilty plea. *Holloway v. State*, 989 S.W.2d 216, 219 (Mo.App.1999), *overruled on other grounds by State v. Withrow*, 8 S.W.3d 75 (Mo. banc 1999). A defendant is not required to admit or to recite the facts constituting the offense in a guilty plea proceeding, so long as a

factual basis for the plea exists. *State v. Morton*, 971 S.W.2d 335, 340 (Mo.App. 1998). "A factual basis is established if the defendant understands the facts recited by the judge or the prosecutor" at the guilty plea proceeding. *Id.* A defendant, however, should express "an awareness of the nature and elements of the charge to which he or she pleads guilty." *Vann v. State*, 959 S.W.2d 131, 134 (Mo.App.1998).

Brown was charged with trafficking in the first degree under § 195.222.8(2), RSMo 1994, which says:

8. A person commits the crime of trafficking drugs in the first degree if, except as authorized by sections 195.005 to 195.425, he distributes, delivers, manufactures, produces or attempts to distribute, deliver, manufacture or produce more than one hundred fifty grams of any material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: amphetamine, its salts, optical isomers and salts of its optical isomers; methamphetamine, its salts, isomers and salts of its isomers; phenmetrazine and its salts; or methylphenidate. Violations of this subsection shall be punished as follows:

....

(2) If the quantity involved is four hundred fifty grams or more the person shall be sentenced to the authorized term of imprisonment for a class A felony which term shall be served without probation or parole.

In particular, the state charged that on April 24, 1996, Brown, "either acting alone or purposely in concert with others, manufactured 450 grams or more of a mixture containing any quantity of methamphetamine, a controlled substance, knowing or consciously disregarding a substantial and unjustifiable risk that it was a controlled

substance." Section 195.010(25), RSMo 1994, defines "manufacture" as:

> [T]he production, preparation, propagation, compounding or processing of drug paraphernalia or of a controlled substance, or an imitation controlled substance, either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

Under § 562.041.1(2), RSMo 1994, "[a] person is criminally responsible for the conduct of another[,]" under the theory of accomplice liability, "when ... [, e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense."

 Brown asserts that the evidence did not establish that he acted alone or in concert with others to manufacture methamphetamine. Brown contends that the evidence established that he did not know about the methamphetamine lab in his house until he discovered it after being away for awhile. He contends that the evidence merely established that he was helping to clean up the methamphetamine lab.

During the presentation of the factual basis for the guilty plea, the prosecutor outlined for the court what the state's evidence would be in Brown's case:

> Basically, Judge, this case began sometime before. I believe it was April 24th of 1996. The Jackson County Drug Task Fore and Independence, Missouri Police Department had information from a confidential informant that drugs were being sold out of the residence there at 8730 Wilson. That's in Jackson County, Missouri. This information goes back to October of 1995.
>
> An individual was pulled into the back parking lot going through the back door where methamphetamine and marijuana were being sold out of that residence.
>
> Later on this date, April 24th, 1996, additional information was obtained through a confidential informant who had been to that residence, been there within the last 48 hours and had smelled toxic fumes, a chemical odor.
>
> The same confidential informant who provided reliable information in the past also provided information to Detective Curby at that time he had been to that house three or four times over the last several months and purchased methamphetamine from an individual named Randy at that location.
>
> On the day Detective Curby receives this information from the confidential informant he places it into a search warrant, applies for the search warrant, a circuit court judge from Jackson County reviews the information and the search warrant is signed.
>
> Detective Curby contacts the special operations unit of the Independence, Missouri Police Department. They respond out to that residence. They get there on April 24th of 1996 about nine, 9:30 in the p.m. They had done surveillance on the house prior to making entry into the house. They sat on the house for a number of hours not seeing activity coming in—anyone coming in or anyone going out. He saw a number of cars parked in the back lot. They anticipated contacting some individuals in the residence. They knew about the trap door.
>
> Additional information provided by the confidential informant also provided

information that the windows downstairs were blacked out, that you could not see into the downstairs. In addition to that, the door into the downstairs basement was barricaded. There was a steel gate that would prevent their entry.

Officers made entrance about 9:30 in the evening, went directly to the trap door where they found a lady, Jackie Fenimore, halfway in and out of the hole. They pulled her out of the hole and ordered the rest of the individuals down in the basement to come out of the hole. This defendant comes out next.

The first thing that the Court should know is when they first made entry into the house, they smelled the fumes that they, in their experience, and they've served a number of search warrants, over a hundred, which in their experience told them there is a meth lab working in this residence.

When they get to the hole after they pulled Ms. Fenimore out, they are telling, you know, the occupants, police, search warrant, come out of the basement. And they notice that the fumes are getting stronger and stronger. A major difference in the amount of fumes that they encounter at the hole versus when they first come into the residence.

The fumes get much, much stronger, and then this defendant comes out of the hole and he has a gun apparently in his waistband, a .380. It's loaded. It came out of his waistband. It was recovered by the officers there at the scene. It's taken into custody and secured.

The officers are trying to get the final occupant down in the basement, a lady named Sheila Rose, to come up. She is smashing apparently—they hear glassware breaking. The fumes are getting worse. They hear glassware breaking. She later comes up.

As before and after she's coming up, the officers testify they see a green haze, actually see a haze of fumes coming out of that hole like a chimney effect, fumes coming out of that hole hitting them in their face, but they maintain their position there trying to secure the hole and get these people out of this hole. So they're exposed to all these fumes at that time. She later comes out and she's secured.

Officers go down in the basement to make sure there are no other occupants and they clear the residence.

They attempt to open the doors. They have to use bolt cutters to get that front door open that goes down to the basement. They also have to kick in the windows that surround the residence that goes into the basement.

One of the officers, Steve Myers, actually injures his foot when he's trying to kick in a window. There's a sense of urgency because they had a feeling this place may blow up. They were trying to get ventilation in there as soon as possible.

L.D. Mathews is called out from the DEA. He comes in and processes the lab. He recovers samples from a number of jars and glassware containers. The containers and the substances are destroyed as required under DEA and EPA guidelines, but the samples are submitted to the North Central Laboratory up in Chicago and analyzed by Mr. Gerald Showronski, and three of the exhibits were recovered. I believe them to be 4, 5, and 7, they are analyzed and it is determined they contain methamphetamine, and the final amount that is computed by Mr. Showronski is this defendant was in possession of 766.9 grams there in his residence that had been manufactured in that residence.

L.D. Mathews also recovers other items from the residence; mini thins, Muriatic acid, hydrochloric acid, pseudoephedrine, red phosphorus, also solvents, other items used in manufacturing methamphetamine.

The testimony of L.D. Mathews would be that this was a working lab; that the amount of methamphetamine being processed in that lab goes well beyond any personal use. It would have been for the purpose of distribution of methamphetamine.

After the state presented the factual basis for the guilty plea, the court inquired of Brown:

Q. . . . . [D]o you agree then that if the [s]tate could put on the evidence, and it seems like they are prepared to do that, that they just explained to you, that more than likely than not you would be convicted of this crime?

A. Yes.

Q. Therefore, you believe it is in your best interest, sir, to plead guilty for the 15 straight years without probation and parole versus taking a risk of getting a life sentence or something in excess of 15 years?

A. Yeah.

Q. Your lawyer has gone over an instruction which is based on MAI instructions 304.04, which says, "A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense or if for the purpose of committing that offense he aids or encourages the others in committing it."

So there is no doubt, you helped clean up a meth lab. You did that?

A. Yes.

Q. You are saying it wasn't yours but you helped clean it up and you knew what it was?

A. I presumed that's what it was.

Q. You knew what it was, didn't you, Mr. Brown?

A. Yes.

Q. You're not a stupid person. You went downstairs and you saw a meth lab and helped clean it up?

A. Right.

Q. So your are guilty of this offense?

A. Right.

■ While explaining every element to a defendant is not necessary, the defendant still must understand the nature of the charges against him or her. *State v. Taylor,* 929 S.W.2d 209, 217 (Mo. banc 1996), *cert. denied,* 519 U.S. 1152, 117 S.Ct. 1088, 137 L.Ed.2d 222 (1997). This record does not persuade us that Brown understood the nature of the charges against him.

Contrary to the court's representations on the record, Brown's mere act of cleaning up a methamphetamine lab in his house, allegedly assembled without his knowledge while he was away, does not make him guilty of first degree trafficking, even under a theory of accomplice liability. Evidence that a defendant was found cleaning up a methamphetamine lab does not establish that he "acted either alone or purposely in concert with others" to manufacture 450 grams or more of methamphetamine. Although the state asserts that the evidence recited by the prosecutor established the factual basis for the plea, and we are not confident that it does, the circuit court misled Brown about to what he was pleading guilty. Given the circuit court's representation that Brown was guilty of the offense because he "went downstairs[,] . . . saw a meth lab and helped clean it up," we are not convinced

that Brown understood the facts recited by the judge or the prosecutor or that he was aware of the nature and elements of the charge to which he was pleading guilty.

We find that the circuit court clearly erred in accepting Brown's plea of guilty to trafficking in the first degree because the circuit court failed to establish a proper factual basis for that offense, in violation of Rule 24.02(e). The requirements of Rule 24.02(e) were not met in that Brown did not understand the nature of the charges against him. The record, therefore, shows an insufficient factual basis that Brown entered a knowing and intelligent guilty plea. We reverse the circuit court's judgment and remand with directions that the circuit court vacate and set aside Brown's guilty plea.

ROBERT G. ULRICH and RONALD R. HOLLIGER, Judges, concur.