**Douglas CALVIN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 65265.**

Missouri Court of Appeals, Western District.

Aug. 1, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 26, 2006.

Application for Transfer Denied Nov. 21, 2006.

---

Jeannie M. Willibey, Kansas City, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before THOMAS H. NEWTON, P.J., PATRICIA A. BRECKENRIDGE, and PAUL M. SPINDEN, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Douglas A. Calvin brings this appeal from a circuit court's denial of his motion for post-conviction relief in a case involving a guilty plea to a felony charge of criminal non-support. He claims that his plea counsel was ineffective for failing to advise him that he had a viable "good cause"

defense to the charge and that the plea court erred in accepting his plea without an adequate factual basis. We reverse and remand for further proceedings.

In July 1998 the State filed a complaint against Mr. Calvin in Buchanan County, alleging that he had committed the class D felony of criminal non-support, § 568.040,[1] for knowingly failing to provide, without good cause, adequate support for three of his minor children during the six months of June, July, August, and September 1997, and April and May 1998.[2] Mr. Calvin had been in a Department of Corrections treatment center immediately preceding this period, from January to May 1997, in relation to a non-support charge that was filed in 1996 in Buchanan County. He earned $7.50 each month he was incarcerated. On his release from treatment, he was taken directly to the Boone County Jail for failure to appear in that county on a felony driving-while-intoxicated charge.[3] He was released to an electronic monitoring program in June 1997 and was unable to secure employment until mid-July. While he paid his Boone County child-support obligation, he did not begin paying child support in Buchanan County until October and continued to do so until April 1998 when he entered an in-patient treatment program as a condition of his Boone County probation. He had no income for the thirty days he spent in the program, for which, like the electronic monitoring program, he had to pay.

In October, Mr. Calvin met with counsel and briefly discussed his incarcerations in relation to the July 1998 non-support charge filed in Buchanan County. A defense strategy was delayed until counsel could obtain the information at the preliminary hearing that would verify what Mr. Calvin had told him. When they arrived at the preliminary hearing in November, the prosecutor informed them that unless Mr. Calvin pleaded guilty to the 1998 non-support charge, the State would seek revocation of his probation for a probation violation in his 1996 non-support case. Any possible good cause defense to the 1998 charge remained unaddressed, as Mr. Calvin's counsel advised him to accept the plea offer to remain at liberty and get a fresh start on meeting his child-support obligations.[4] Mr. Calvin entered a guilty plea, and the court continued his probation in the 1996 case and suspended imposition of sentence in the 1998 case, placing him on probation for five years.

In April 2002, Boone County revoked Mr. Calvin's probation in his criminal non-support case there and in his driving-while-intoxicated case; he was ordered to serve consecutive terms of 180 days and five years, respectively. In July, Mr. Calvin surrendered his probation in Buchanan County as to the 1996 non-support case and was ordered to serve his five-year sentence. His probation in the 1998 Buchanan County non-support case was re-

1. Statutory references are to RSMo. (2000), unless otherwise indicated.

2. Mr. Calvin has a child-support obligation for a fourth minor child in Boone County.

3. He was unable to appear because he had been incarcerated in Buchanan County.

4. A stipulation as to what Mr. Calvin's plea counsel would have testified to had he appeared at the post-conviction hearing was admitted in 2004 when the court granted Mr. Calvin's motion to reopen the case for the admission of additional evidence. In the document, plea counsel stated that he had no specific recollection as to whether (i) he had advised Mr. Calvin that he had a good cause defense in relation to the 1998 non-support charge, (ii) he was aware that Mr. Calvin was incarcerated during part of the time charged, or (iii) he specifically consulted with Mr. Calvin regarding each six-month time period that was subject to the 1998 non-support charge.

voked, and he was ordered to serve two years in prison, consecutive to his incarceration in the 1996 case. During the probation-revocation hearing, Mr. Calvin admitted that he had not made any payments in Buchanan County since November 1999 and had worked off and on at odd jobs in different places around the state, thus absconding from probation supervision and avoiding warrants for his arrest.

Mr. Calvin then filed a *pro se* motion for post-conviction relief under Rule 24.035,[5] claiming, among other matters, that (i) he would not have pleaded guilty to criminal non-support in 1998 had his plea counsel properly investigated the case and advised him that he had a good cause defense to the charge, and (ii) there was an insufficient factual basis on which to accept his plea, thus the court was unable to determine that he understood the nature and elements of the charge against him. Counsel was appointed to represent Mr. Calvin, and an amended motion was filed on his behalf. Following a hearing, the circuit court denied the motion, finding that he was not entitled to a good cause defense as a matter of law and that counsel's failure to advise Mr. Calvin about a good cause defense did not constitute ineffective assistance of counsel. The court also found that there was a sufficient factual basis for the plea. Mr. Calvin then filed this appeal.

■ Our Rule 24.035 review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k). The movant has the burden of proving such error by a preponderance of the evidence, and, for this court to find clear error, we "must be under the 'definite and firm impression that a mistake has been made.' " *Buckner v. State,* 35 S.W.3d 417, 420 (Mo.App. W.D. 2000) (citation omitted). To prove ineffective assistance of counsel, the movant must show that (i) "his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances," and (ii) he was prejudiced by counsel's failure. *Id.* (citation omitted). If either prong of this test, derived from *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is not satisfied, we need not consider the other. *Buckner,* 35 S.W.3d at 420. A movant establishes prejudice in a guilty plea case if he proves that "but for the errors of counsel, he would not have pleaded guilty and would have demanded a trial." *Id.* (citation omitted). "If conviction results from a guilty plea, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges on the voluntariness and knowledge with which the plea was made." *Id.* (citation and internal quotations omitted).

Section 568.040.1 provides, in part, "A person commits the crime of nonsupport if he knowingly fails to provide, without good cause, adequate support ... which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law." [6] "Good cause" is defined as "any substantial reason why the defendant is unable to provide adequate support. Good cause does not exist if the defendant purposely maintains his inability to support." § 568.040.2(2).

■ The circuit court correctly notes that a legal obligation to provide support

---

5. Rule references are to the Missouri Rules of Criminal Procedure.

6. The crime is a class D felony if "the person obligated to pay child support commits the

crime of nonsupport in each of six individual months within any twelve-month period, or the total arrearage is in excess of five thousand dollars." § 568.040.4.

to minor children is not excused by changes in financial condition resulting from incarceration. *Denton v. Sims,* 884 S.W.2d 86, 90 (Mo.App. E.D.1994); *Oberg v. Oberg,* 869 S.W.2d 235, 238 (Mo.App. W.D.1993). The circuit court apparently determined that Mr. Calvin's incarcerations were a product of voluntary behavior and, thus, that his failure to pay was willful as a matter of law, and that, for this reason, his counsel could not have been ineffective for failing to advise him about the good cause defense.[7]

■ Despite the fact that most, if not all, criminal conduct involves voluntary behavior, before an incarcerated parent can be found criminally liable for willful failure to pay child support, however, the court must consider whether the parent has a present inability to pay the obligation. *Oberg,* 869 S.W.2d at 238.[8] As Mr. Calvin cogently points out, if the financial impact of incarceration on a person's ability to pay child support cannot be a factor that the court considers with respect to a good cause defense,

> then a criminal nonsupport defendant could be charged with criminal nonsupport while serving a term of imprisonment for criminal nonsupport and could then be subject to another term of imprisonment. That could potentially go

on as long as the child support obligation existed and would never permit the defendant to get back on his feet and become able to meet his obligation to his children.

While there may be some who would rather go to jail than fulfill their child-support obligations, the courts should be able to distinguish those individuals from others who, despite their problems with the law, may otherwise be making an attempt to meet their obligations.

■ Mr. Calvin testified during his post-conviction hearing that his assets consisted of clothing and a few personal items between June 1997 and May 1998. He owned no real property; he owned no other personal property; he had no savings account. When he was released from the Boone County Jail in June 1997, he lived with his mother. He had to go to Goodwill to obtain clothing for job interviews. He was incarcerated or in treatment both before and during the specific months for which he was charged with criminal nonsupport. He had to borrow money to pay for his treatment and to pay for a lawyer. When he found a job in the construction industry as soon as he was free to do so while subject to electronic home monitoring, he was only able to earn $7 an hour. Mr. Calvin also has significant problems

---

7. While Mr. Calvin's counsel lacked sufficient information to know whether a good cause defense was viable, he did, in fact, discuss the good cause defense with Mr. Calvin, who testified during his post-conviction hearing as follows:

> Q. Okay. Did your attorney give you any advice as to whether you had a good cause defense at that point or was—
> A. He was—Yeah, he said, "Oh, yeah, if you just got out of jail for child support," he said, "this is—they can't do that," and blah, blah this, blah, blah that, "but let me get all the paperwork and then we can go from there."

8. In this regard, the court states, "While an incarcerated parent's child support obligation may continue to accrue while he is in prison, obviously, the immediate inability to pay the obligation is a significant factor in determining whether contempt or criminal charges for willful failure to pay the obligation are appropriate." *Oberg v. Oberg,* 869 S.W.2d 235, 238 (Mo.App. W.D.1993). *See also Denton v. Sims,* 884 S.W.2d 86, 90 (Mo.App. E.D.1994) (citing *Oberg,* court states "we note that Father's inability to make these payments [due to his incarceration] must be considered. It would be inappropriate to hold him in contempt or to find him criminally liable for willful failure to pay child support.").

with drugs and alcohol that began in his youth and has been in and out of treatment multiple times.

■ Under these circumstances, Mr. Calvin's ability to pay child support during the specific six months charged was seriously in question and should have been investigated by a reasonably competent attorney before the plea agreement was considered. Because he did not know that he had a viable good cause defense, it cannot be said that Mr. Calvin's plea was voluntary. Yet, Mr. Calvin has not shown that but for the errors of counsel, he would not have pleaded guilty and would have demanded a trial. The Buchanan County prosecutor made it clear that Mr. Calvin's probation would be revoked in the 1996 non-support case if he did not plead guilty to the 1998 charge, and Mr. Calvin's plea counsel indicated that he would work with him, even if he were incarcerated, to defend the 1998 charge, if that was what Mr. Calvin wished.[9] Further, and perhaps even more importantly, Mr. Calvin testified that he knew he did not want to go to jail that day, so "I walked up and pled guilty." Because Mr. Calvin entered a guilty plea, at least in part, to avoid going to jail for violating his probation on an earlier non-support charge,[10] he has not shown that "but for the errors of counsel, he would not have pleaded guilty and would have demanded a trial." *Buckner*, 35 S.W.3d at 420. Thus, he was not prejudiced by counsel's ineffectiveness. Accordingly, this point is denied.

9. According to Mr. Calvin's testimony during the post-conviction hearing, plea counsel stated "If you want to go ahead and go to jail and fight together, I'll keep fighting for you while you're in jail."

10. There is nothing in the legal file about the basis for the potential probation revocation as to the 1996 non-support charge. If it were simply the new charge filed in 1998, to which

As for Mr. Calvin's claim that there was an insufficient factual basis for his plea, Rule 24.02(e) provides that "The court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." We have discussed whether a factual basis has been established in this way:

Before accepting the guilty plea, the circuit court must "determine facts which defendant admits by his pleas and that those facts would result in defendant['s] being guilty of the offense charged." If the facts presented to the court during the guilty plea hearing do not establish the commission of the offense, the court should reject the guilty plea. A defendant is not required to admit or recite the facts constituting the offense in a guilty plea proceeding, so long as a factual basis for his plea exists. "A factual basis is established if the defendant understands the facts recited by the judge or the prosecutor" at the guilty plea proceeding. A defendant, however, should express "an awareness of the nature and elements of the charge to which he or she pleads guilty."

*Brown v. State*, 45 S.W.3d 506, 508 (Mo. App. W.D.2001) (citations omitted).

This court has addressed the purposes and requirements of this rule by stating:

Some of the stated purposes of Rule 24.02 are that a defendant understand the specific charges against him, that he understand the maximum penalty confronting him, and that he recognize that he has waived specific legal rights by

Mr. Calvin appears to have had a viable good cause defense, our analysis of prejudice would be different. Mr. Calvin does have the burden of proving ineffective assistance of counsel by a preponderance of the evidence, *Buckner v. State*, 35 S.W.3d 417, 420 (Mo. App. W.D.2000). He has not provided any evidence as to this issue.

pleading guilty. A plea forms the factual basis for a guilty plea where it is voluntarily and understandingly made, *as well as unequivocal as to the factual requisites necessary to establish every element of the offense.*

A plea of guilty is looked upon as an admission to the facts that are alleged in the charging instrument. A defendant need not expressly admit guilt before the court can make a determination as to the factual basis of a plea. The defendant need not admit to or even believe the truth of the charges; it is required only that the plea be made knowingly and voluntarily. It is not required that every element of the crime be explained so long as the defendant understands the nature of the charge. "When an accused admits in open court facts which constitute the offense for which he is charged, he cannot thereafter withdraw his plea on the assertion that he did not understand the nature of the charge to which he plead [sic] guilty."

*Saffold v. State,* 982 S.W.2d 749, 753 (Mo. App. W.D.1998) (emphasis added; citations omitted).

We reiterate the offense with which Mr. Calvin was charged: "A person commits the crime of nonsupport if he knowingly fails to provide, without good cause, adequate support ... which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law." § 568.040.1. The State specifically charged Mr. Calvin with committing the class D felony of criminal non-support, § 568.040.4, for knowingly failing to provide, without good cause, adequate support for three of his minor children during the six months of June, July, August, and September 1997, and April and May 1998.

The circuit court read the charge to Mr. Calvin as follows:

> The new charge states that during the six-month period from June 1997 through May of 1998—during the 12-month period from June of 1997 through May of 1998 in Buchanan County, Missouri, you knowingly failed to provide without good cause adequate food, clothing, lodging, or medical attention for Bruce Calvin, Brittany Calvin and Brandon Calvin, your minor children for whom you were legally obligated to provide support.[11]

The factual basis of Mr. Calvin's plea is reflected in the following exchange:

Q. And are you pleading guilty to that charge?

A. Yes, sir.

Q. Why weren't you paying your child support during that period of time?

A. A few months I had minor setbacks, sir. Got myself into little jams, and I was trying to do the best I could.

Q. All right. Were you working during those periods of time?

A. Some—Some—

Q. Did you pay any support during the period of time that you were working?

A. Yes.

Q. Would that support have been adequate to support the three children?

A. No.

Q. If Mr. Scroggins had indicated that you were by now $22,000 behind in your child support, is that right?

---

11. We would note that this recitation of the charge is inaccurate to the extent that it does not inform the defendant that he was charged with failing to provide adequate support for six specific months in a twelve-month period. Mr. Calvin, however, does not challenge this aspect of the plea colloquy.

A. Yes, sir.[12]

An element of a criminal non-support charge is that the parent is without good cause in failing to provide support. § 568.040.1. The court does not have to explain every element to a defendant, but the defendant still must understand the nature of the charges against him or her. *Brown*, 45 S.W.3d at 511. In *Brown*, the defendant agreed during the plea colloquy that he "helped clean up a meth lab" that was not his and that, therefore, he was guilty of first degree trafficking. *Id.* In this regard, the court states:

> Brown's mere act of cleaning up a methamphetamine lab in his house, allegedly assembled without his knowledge while he was away, does not make him guilty of first degree trafficking, even under a theory of accomplice liability. Evidence that a defendant was found cleaning up a methamphetamine lab does not establish that he "acted either alone or purposely in concert with others" to manufacture 450 grams or more of methamphetamine. Although the state asserts that the evidence recited by the prosecutor established the factual basis for the plea, and we are not confident that it does, the circuit court misled Brown about to what he was pleading guilty. Given the circuit court's representation that Brown was guilty of the offense because he "went downstairs[,] ... saw a meth lab and helped clean it up," we are not convinced that Brown understood the

facts recited by the judge or the prosecutor or that he was aware of the nature and elements of the charge to which he was pleading guilty.

*Id.* at 511–12.

■ While Mr. Calvin, like Mr. Brown, unequivocally agreed that he was pleading guilty to the charge, as recited by the court,[13] there is nothing in the plea-hearing transcript to indicate that the court established a factual basis for his plea because nothing was said or elicited from Mr. Calvin to show that, during the months specified in the criminal complaint, he was without good cause in failing to provide his children with adequate support. There is no evidence that his counsel or anyone else advised Mr. Calvin during the plea hearing that if he was unable to provide support for any substantial reason, i.e., because he had been incarcerated, he could not be held criminally liable for the offense. Thus, it cannot be said that he understood the nature and elements of the charges against him. Further, as the foregoing exchange indicates, when asked to explain why he had not paid child support, Mr. Calvin did not unequivocally state that he lacked good cause to provide adequate support for his children.

In fact, Mr. Calvin's testimony is consistent with his inability to provide support, because he testified that during the relevant time period he had "minor setbacks," had gotten into "jams," was trying to do the best he could, and had only worked

---

12. It could be argued that this response alone supports Mr. Calvin's conviction for felony non-support under section 568.040.4, which provides an alternative means for classifying criminal non-support as a felony. Because Mr. Calvin was charged in a single information with the non-support of three children, however, he would also have had to admit additional facts for his plea to be knowing and voluntary, i.e., that the arrearages were in excess of $5,000 as to each child and that the $22,000 total arrearages did not include arrearages outside the three-year statute-of-limitations period for a felony. *State v. Sellers*, 77 S.W.3d 2, 6 (Mo.App. W.D.2002).

13. Recall that the circuit court did not specify which six months out of the twelve-month period Mr. Calvin had failed to provide adequate support without good cause.

"some." In light of such responses, the circuit court was obligated, before accepting the guilty plea, to explore the issue further to determine either that Mr. Calvin had the ability to pay support or purposely maintained his inability to provide support during the specific months charged. On this record, it is not clear whether his "setbacks," "jams," and spotty employment were voluntary.[14] Because the record does not demonstrate facts that would establish Mr. Calvin's guilt of the charged offense, it cannot be said that he understood the specific nature and elements of the charge against him. *Brown*, 45 S.W.3d at 511–12. His plea was not knowing and voluntary, and the plea court clearly erred in accepting Mr. Calvin's plea of guilty to criminal non-support. We are under the definite and firm impression that a mistake has been made, *Buckner*, 35 S.W.3d at 420, and that the circuit court erred in denying Mr. Calvin's request for post-conviction relief. Accordingly, this point is granted.

For these reasons, we reverse the circuit court's denial of Mr. Calvin's post-conviction motion, vacate his conviction and sentence, and remand for trial.

PATRICIA A. BRECKENRIDGE, and PAUL M. SPINDEN, JJ. concur.

---

14. In retrospect, given testimony and evidence adduced during the post-conviction proceeding about Mr. Calvin's incarceration and drug treatment record, his probation conditions, and the employment he was able to find, he likely had a viable good cause defense to the crime charged.