Sara Jayne (Sims) DENTON,
Petitioner/Respondent,

v.

Bruce Clayton SIMS,
Respondent/Appellant,

Harold Sims & Irma Sims, Intervenors.

No. 64023.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Sept. 16, 1994.

Russell J. Kruse, Palmyra, for appellant.

Mary L. Rhodes, Hannibal, for respondent.

GRIMM, Judge.

Father appeals * from an adverse order which (1) awarded Mother retroactive child support, (2) found him in contempt of court for non-payment of medical bills, and (3) denied his motion to reduce his child support while incarcerated. We modify and affirm.

* Mother did not favor us with a brief.

## I. Background

The trial court dissolved Father and Mother's marriage in May, 1986. Mother received custody of the three minor children. The two oldest were girls, then approximately 12 and 7 years of age. Their third child, a boy, was then 3. The court awarded Mother $133.33 per month per child for support. Further, the court ordered Father to maintain medical insurance on the children and to pay one half of the uncovered medical expenses.

In August, 1986, Father pled guilty to first degree sexual abuse of his oldest daughter. The trial court sentenced him to two years in prison. The Department of Corrections released him "sometime around October of '87."

In November 1988, pursuant to the parties' stipulation, the court modified the dissolution decree. Among other things, Father agreed to pay all uninsured medical and hospital expenses after April, 1990.

In April, 1991, a jury found Father guilty of first degree sexual abuse of his other daughter. The trial court sentenced him to four years in the Department of Corrections. His conviction was affirmed. *State v. Sims*, 826 S.W.2d 113 (Mo.App.E.D.1992). In May, 1992, Father began serving his sentence. His conditional release date is December, 1994.

In the meantime, Mother filed a motion to modify in October, 1990. She sought termination of Father's visitation rights and an increase of child support. In July, 1992, after his incarceration, Father filed a cross motion to modify. He sought to terminate his child support and insurance expense obligations. The trial court conducted a hearing in February, 1993, and issued its judgment in April, 1993.

The trial court increased the child support from $133.00 to $366.00 per month per child, retroactive to October, 1990. Among other things, the court found Father in contempt for failure to pay a $274.00 hospital bill.

## II. Retroactive Child Support

In his first point, Father claims the trial court abused its discretion by (1) failing to find that the oldest daughter was emancipated prior to October, 1990 and (2) making the child support award retroactive.

### A. Emancipation

Father adopted the oldest daughter when she was three to five years old. In the summer of 1990, when she was 16, she moved from Mother's home and began living with her biological father. Mother helped her move her "belongings" over to her biological father's house.

Thereafter, Mother did not send any child support to child or biological father. The only financial support Mother gave oldest daughter was to hand her some money from time to time "when she would come over to the house to visit."

Daughter never resided with Mother after the summer of 1990. She turned 18 on May 17, 1992, and married on July 25, 1992.

Emancipation is the relinquishment of parental control and of the legal obligation to support a minor child. It is never presumed. Rather, the burden of proving emancipation is on the party asserting it. *Sutton v. Schwartz*, 860 S.W.2d 833, 835 (Mo.App.E.D. 1993).

A minor child may be emancipated in one of three ways: (1) by express parental consent, (2) by implied parental consent, or (3) by a change of the child's status in the eyes of society. *Bopp v. Bopp*, 671 S.W.2d 348, 351 (Mo.App.E.D.1984). This third method is most often shown by the child's marriage or entry into military service. *Id.* However, it may also be shown when a child who is physically and mentally able to care for herself voluntarily chooses to leave the parental home and attempts to "fight the battle of life on [her] own account." *Specking v. Specking*, 528 S.W.2d 448, 451 (Mo. App.1975) (quoting *Brosius v. Barker*, 154 Mo.App. 657, 136 S.W. 18 (1911)). Nevertheless, emancipation can occur only when a minor child is old enough to take care of and provide for herself. *Sutton*, 860 S.W.2d at 835; *Bopp*, 671 S.W.2d at 351.

■ Nothing in the record indicates mother expressly consented to daughter's emancipation. Instead, Father contends that mother impliedly consented to emancipation, or in the alternative, that daughter's status changed in the eyes of society. Father maintains that the evidence set out above constitutes an implied consent for purposes of emancipation.

We disagree. Nothing in the record would support a finding that daughter could take care of and provide for herself. Apparently, she was being cared for by her biological father. She was not emancipated.

■ However, the situation before us is unique. Mother was awarded retroactive child support for a period of time when she was not supporting daughter and daughter was not living with her. Instead, daughter was living with a third-party. Mother made no financial contribution to her upbringing, and the child became emancipated in 1992. This award creates a result where Mother would receive a windfall for expenses not incurred. Nor would daughter receive any benefit from money intended for the expenses of her care.

Retroactive child support is appropriate in many circumstances. However, to permit it here would result in an inequity. Therefore, that portion of the trial court's order directing Father to pay "the sum of $366.00 per month per child for child support of the three minor children for the months of October 1990 through May 1992" is amended by substituting "two minor children" for "three minor children."

### B. Calculation of Support

■ Next, Father challenges the trial court's calculations of retroactive child support because they were based on the presumptive amount in Mother's Form 14 submissions when "the children's actual expenses were significantly less than the presumed expenses."

Father was employed by a railroad. In 1990, 1991, and the first five months of 1992, his income was $56,380.00, $51,900.00, and $18,871.42 respectively.

Mother worked part-time and was a college student. Her income for 1990, 1991, and 1992 was $5,112.60, $4,415.00, and $700.00. Beginning December 28, 1992, Mother became a day care director earning $17,500 per year.

Both parties submitted Form 14 worksheets. They basically reflected the above incomes. Mother's reflected three children, while Father's reflected two.

Further, Mother's testimony and Statement of Income and Expenses reflected average monthly expenses just for the two children of $535.00. In addition, other monthly expenses for her and the children amounted to $1,537.55 per month.

The trial court's findings adopted Mother's Form 14 calculations for 1990 and 1991. These calculations, for three children, reflected monthly child support of $1,118.20 and $1,061.88 respectively. The court's judgment awarded $366.00 per month per child, or a monthly total of $1,098.00.

The trial court's award of $366.00 per month per child is supported by the evidence. Further, a trial court has authority to order a modification of child support effective as of the date the motion to modify is filed. *Bopp,* 671 S.W.2d at 351. Here, the motion was filed October 1, 1990. Thus, the trial court had authority to modify the child support effective October 1, 1990. Pursuant to Rule 84.14, the award of $366.00 per month for the youngest daughter and for the son is affirmed for the months of October 1990 through May 1992.

### C. Laches and Estoppel

■ Finally, Father claims the trial court erred in granting retroactive support because mother "waived her claim to retroactive support by estoppel and laches for failure to timely prosecute her claim."

Father filed an answer to Mother's motion to modify. He did not plead either estoppel or laches.

Rule 55.08 requires a party, in pleading to a preceding pleading, to "set forth all applicable affirmative defenses." Estoppel and laches are affirmative defenses. Rule 55.08.

■ Failure to plead estoppel and laches precludes raising those defenses on appeal. *See Ronollo v. Jacobs,* 775 S.W.2d 121, 125 (Mo.banc 1989) and *Brunswick Corp., Mercury Marine v. Hering,* 619 S.W.2d 950, 954 (Mo.App.E.D.1981). Further, no evidence was presented to establish either estoppel or laches. Point denied.

### III. Contempt

■ Father's next point challenges the trial court's finding that Father was in contempt for failing to pay certain medical expenses.

■ We do not reach the merits of this point. A civil contempt order is not a final judgment until the order is enforced. *Muegler v. Muegler,* 784 S.W.2d 839, 841 (Mo. App.E.D.1990).

Here, the trial court makes no provisions for enforcement of the contempt order. It merely sets out how Father may purge himself of contempt and that no contempt action will be permitted while he is in prison. The finding for contempt is not final and, therefore, not appealable. *See id.*

### IV. Child Support While Incarcerated

■ Father's final point alleges the trial court erred in ordering him to pay $100 per month for two children, retroactive to June 1992. He contends there is no evidence to support the trial court's finding that he has "the ability to earn a minimum wage" while in prison. Thus, he argues, there is no evidence to support this award.

Father testified he receives $7.50 per month while in prison. He does not have any income from investments. He relies on his parents for his necessities.

Our western district colleagues recently decided this issue. *Oberg v. Oberg,* 869 S.W.2d 235 (Mo.App.W.D.1993). The *Oberg* opinion collects cases from numerous states and discusses the rationale of the various policies. That court concludes, and we agree, that "incarceration does not excuse the obligation to support the needs of one's children." *Id.* at 238.

Here, Father's length of incarceration is similar to that in *Oberg.* Oberg was ordered to pay $25.00 per week for each of two children. That amount is comparable to the trial court's order here directing Father to pay $100.00 per month for his two children. The *Oberg* court affirmed the trial court's refusal to modify his support obligation while incarcerated.

As in *Oberg,* we note that Father's present inability to make these payments must be considered. It would be inappropriate to hold him in contempt or to find him criminally liable for willful failure to pay child support. Further, the trial court should schedule repayment of the accumulated arrearage after Father is released according to Father's post-incarceration income. *See id.* Point denied.

The trial court's judgment is modified by deleting the award of retroactive child support for the oldest daughter. As modified, the judgment is affirmed.

CRIST, P.J., and SIMON, J., concur.