STATE of Missouri ex rel. Denise
Faye MOSIER, Respondent,

v.

John KLEIN, Appellant.

No. ED 79721.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 12, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 2002.

Application for Transfer Denied
Sept. 24, 2002.

John Klein, Pacific, pro se.

Denise Faye Mosier, c/o Deborah
McMillan, Cape Girardeau, pro se.

PAUL J. SIMON, Judge.

John Klein, movant, appeals the trial court's grant of his motion to modify the administrative order of the Division of Child Support Enforcement. On appeal, movant contends that the trial court erred by modifying the amount of child support he was to pay in a manner inconsistent with the guidelines set forth by Missouri Civil Procedure Form No. 14 ("Form 14"). We reverse and remand.

On May 17, 2000, movant filed a motion to modify the administrative order of the Missouri Division of Child Support Enforcement, according to which he was to pay $223 per month for the support of his minor child, Denise, born June 6, 1994. Since the order, movant has been convicted of second degree murder and sentenced to 25 years in prison with an anticipated release date of May 30, 2021. Movant earns $10 per month in prison and has no assets from which he can satisfy his child support obligation. Therefore, movant asks that his child support obligation be re-calculated in accordance with the guidelines set forth by Form 14. Without considering any factors external to Form 14, such re-calculation would set movant's child support at $2 per month.

In its judgment of May 9, 2001, the trial court conceded that movant's circumstances had changed substantially enough to justify a reduction in his child support and also that $2 would be the amount dictated by Form 14 under the circumstances. However, the trial court found that child support in the amount of $2 per month would be "unreasonable and inappropriate." Therefore, the court set movant's child support obligation at "$100 per month retroactive to June 2001," to be assessed upon movant's release from prison. Movant appeals.

An award of child support is within the discretion of the trial court.

*Garner v. Garner*, 973 S.W.2d 513, 514 (Mo.App. E.D.1998). Unless there exists a manifest abuse of discretion, we will not substitute our judgment for the trial court's with regard to a modification of child support. *Id.* Furthermore, the trial court's judgment cannot be against the weight of the evidence, and it cannot erroneously declare or apply the law. *Id.* at 514.

Rule 88.01(b) establishes a rebuttable presumption that the child support amount calculated according to Form 14 is the amount to be awarded by the trial court. In order to rebut the presumption, it is sufficient that the court enter a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate. *Waite v. Waite,* 21 S.W.3d 48, 52 (Mo.App. E.D.2000).

A judgment awarding a greater child support amount than suggested by Form 14 is proper so long as the trial court makes a written finding on the record that the presumed child support amount is unjust or inappropriate after considering all of the relevant factors. *Brooks v. Brooks,* 21 S.W.3d 834, 838 (Mo. App. E.D.1999).

Here, the trial court made such a finding when it stated that, "[the presumed] amount is unreasonable and inappropriate and that Respondent should bear a larger share of the expenses of his child upon his release." In making this finding, the trial court considered the length of incarceration, the earning potential of movant following his release, the amount of the existing child support award, and the total amount of child support that will have accumulated upon movant's discharge.

Although the trial court followed the requirements of Rule 88.01(b), we must

review the trial court's judgment to determine whether its decision amounts to a manifest abuse of discretion. In determining whether the trial court abused its discretion, we look at whether the evidence supporting the amount awarded is palpably insufficient to support such an award. *McGowan v. McGowan*, 43 S.W.3d 857, 862 (Mo.App. E.D.2001). Here, this inquiry requires a determination of whether the trial court's judgment balanced the ability of the non-custodial parent to pay against the needs of the child. *Id.* at 869. In *Denton v. Sims*, 884 S.W.2d 86, 90 (Mo. App. E.D.1994), we affirmed the trial court's judgment requiring a father to pay $100 per month in child support, retroactive to June 1992, even though he was incarcerated and, therefore, was making only $7.50 per month. *Id.* Furthermore, the trial court was to schedule repayment of the accumulated arrearage after the father was released according to his post-incarceration income. *Id.* Similarly, in *Oberg v. Oberg*, 869 S.W.2d 235, 236 (Mo. App. W.D.1993), our colleagues affirmed the trial court's denial of an incarcerated father's request for a modification of his child support, even though his income had gone from approximately $3000 per month out of prison to $15 per month in prison. In *Oberg*, the father's child support accrued over two years, and totaled $5200 at the time he was released. *Id.* at 239. In *Denton*, the father's length of incarceration, pre-incarceration earning potential, and accrued child support were similar to that in *Oberg*.

In *Oberg* and *Denton*, the fathers were in prison serving substantially shorter terms than movant in the present case. The father in *Oberg* would have owed $5200 in child support upon his release from prison, and his pre-incarceration income was $3000 per month or approximately $36,000 per year. Thus, his accrued child support would have been equal to approximately 14% of his pre-incarceration annual income, which the court held to be a reasonable amount. Similarly, in *Denton*, the father had an average pre-incarceration income of approximately $4000 per month or $48,000 per year and his child support would have accrued to approximately $3100, which would be about 6% of his pre-incarceration average annual income. Here, the longer prison term coupled with the trial court's order setting his child support at $100 per month will result in movant's child support obligation accruing to approximately $13,200. It should be noted, however, that the accrued $13,200 was calculated based on the assumption that movant's child support obligation would terminate when his daughter turned 18. To be sure, that is not the only possibility. Sections 452.340.3(5) RSMo (2000) and 452.340.5 RSMo (2000) provide that movant's child support obligation could terminate when his daughter reaches 18, 21, or 22 years of age depending on the education she pursues. Using the lowest possible accrued amount and the earliest statutorily-provided termination date, the amount of child support movant would owe upon his release would be 100% his pre-incarceration annual income of $13,200.

We find that the trial court's judgment lacks substantial evidentiary support and rises to the level of a manifest abuse of discretion in that the amount set by the trial court was unreasonable and unjust in light of movant's sentence and earning potential.

In his second point on appeal, movant contends that the trial judge meant for the judgment to be retroactive to June 2000, instead of June 2001. Movant argues that the trial court rendered its judgment on May 9, 2001; therefore, the judgment could not possibly be retroactive to June 2001. Since we are reversing and remand-

ing the judgment for reconsideration of the child support award, the trial court may correct the apparent error in its judgment as to retroactivity.

Judgment reversed and remanded.

JAMES R. DOWD, C.J. and SHERRI B. SULLIVAN, J., concur.