In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

 MARY E. WILSON, ) No. ED109202
 )
 Respondent, ) Appeal from the Circuit Court of
 ) St. Louis County
 vs. )
 ) Honorable Bruce F. Hilton
 THOMAS E. MURAWSKI, )
 )
 Appellant. ) Filed: October 19, 2021

 Introduction

 Thomas Murawski (“Husband” or “Father”) appeals the trial court’s judgment dissolving

his marriage with Mary Wilson (“Wife” or “Mother”).

 Husband raises sixteen points on appeal. In Point I, Husband argues the judgment’s

division of assets and debts failed to account for the parties’ need to amend their 2017 tax return.

In Point II, Husband argues the trial court’s monthly maintenance award to Wife was excessive.

In Point III, Husband argues the trial court incorrectly calculated Wife’s net income. In Point

IV, Husband argues the trial court incorrectly calculated his income. In Point V, Husband argues

the trial court erred in its division of child custody. In Point VI, Husband argues the trial court’s

child support award was improper. In Point VII, Husband argues the trial court’s child support

award includes college education expenses he cannot afford. In Point VIII, Husband argues the

trial court incorrectly found he owes $5,600 in retroactive child support. In Point IX, Husband
argues he is entitled to a credit for overpayment of child support. In Point X, Husband argues the

trial court incorrectly found two bank accounts were not marital property. In Point XI, Husband

argues Wife squandered and improperly dissipated support payments. In Point XII, Husband

argues the trial court’s division of assets improperly favored Wife. In Point XIII, Husband

argues the trial court incorrectly calculated the value of his retirement accounts. In Point XIV,

Husband argues the trial court incorrectly calculated the value of the parties’ 2007 GMC Yukon.

In Point XV, Husband argues the trial court erred by assigning him a portion of Wife’s credit

card debt. In Point XVI, Husband argues the trial court’s asset equalization judgment must be

recalculated given the errors alleged on appeal.

 We affirm in part and reverse in part.

 Factual and Procedural Background

 The parties married in 2002. Four children were born of the marriage. Husband is an

executive at an HVAC company and earns approximately $337,000 per year. The parties

stipulated Wife earns $56,000 per year. Husband and Wife separated in October 2017. Wife

filed for dissolution on June 19, 2018. On February 1, 2019, the parties entered a pendente lite

judgment (“PDL”) providing Husband would pay $8,000 per month for maintenance and child

support pending the trial court’s final judgment.

 The parties tried their case over five days from October 8, 2019 through January 9, 2020.

The trial court entered its dissolution judgment on June 3, 2020. The court granted the parties

joint legal and physical custody of the children and ordered Husband to pay $5,000 in

maintenance and $2,342 in child support per month. The judgment provided the three youngest

children would stay with Father six of every fourteen overnights. The judgment further provided

 2
the parties’ oldest child would stay with Father on an informal, as-agreed schedule. Husband

appeals, challenging the trial court’s findings regarding the parties’ income and debt, property

valuation, division of separate and marital property, child custody arrangement, child support,

and maintenance orders. Additional factual and procedural history will be provided below as

necessary to address Husband’s claims.

 Standard of Review

 Dissolution Judgments

 We review marriage dissolutions under the standard set forth in Murphy v. Carron, 536

S.W.2d 30 (Mo. banc 1976). See Sulkin v. Sulkin, 619 S.W.3d 155, 159 (Mo. App. E.D. 2021).

Under Murphy, “a dissolution judgment will be affirmed unless it is not supported by substantial

evidence, it is against the weight of the evidence, it erroneously declares the law, or it

erroneously applies the law.” Id. (citing Alabach v. Alabach, 478 S.W.3d 511, 513 (Mo. App.

E.D. 2015)). We will not review the trial court’s decisions regarding the weight of the evidence,

resolving conflicting evidence, and witness credibility. Id. If the trial court has made no specific

findings on a factual issue, such findings are interpreted as having been found in accordance with

the judgment. Id.

 Child Support Awards

 Child support awards are within the discretion of the trial court and we review for abuse

of discretion. State ex rel. Mosier v. Klein, 83 S.W.3d 15, 16 (Mo. App. E.D. 2002). We will

not substitute our judgment for the trial court’s absent a manifest abuse of discretion. Id. In

determining whether the support amount was unjust and inappropriate, we consider whether the

evidence was palpably insufficient to support the award. Id at 17.

 3
 Discussion

 We first note several of Husband’s Points are impermissibly multifarious and replete with

violations of Rule 84.04(d).1 Husband repeatedly failed to identify whether the trial court’s

alleged errors were unsupported by substantial evidence, against the weight of the evidence,

erroneous declarations of the law, or erroneous applications of the law. Distinct claims of error

must be asserted in separate Points. Rule 84.04(d); Librach v. Librach, 575 S.W.3d 300, 307

(Mo. App. E.D. 2019). We nevertheless exercise our discretion to review Husband’s claims ex

gratia because his arguments are readily understandable. We exercise this discretion with

caution, because each time we review a noncompliant brief ex gratia, we imply substandard

briefing is acceptable. It is not. See Scott v. King, 510 S.W.3d 887, 893 (Mo. App. E.D. 2017).

 Point I: 2017 Joint Amended Tax Return

 In Point I, Husband asserts the parties need to file a joint amended tax return to reflect

unreported income from 2017. Husband argues after the amended tax return is filed, the parties

will likely either receive a refund or incur additional tax liability, which will need to be divided.

Husband asserts the trial court’s failure to address the impact of the amended return creates two

possibilities: (1) the judgment is not final because the parties’ assets and liabilities have been

fully accounted for or (2) the parties will have to determine the value of the amended tax return

later, either on remand or in separate litigation.

 Wife argues the judgment was final and the trial court did not err because the

consequences of the amended return, i.e., a refund or additional liability, did not exist at the time

of trial. Wife reasons there was nothing for the trial court to calculate because the consequence

1
 All rule citations are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

 4
of the amended return was speculative. Wife cites Pickering v. Pickering to argue pre-

dissolution tax consequences may be properly excluded from a dissolution judgment when there

was no evidence of an asset or debt existing at the time of trial. 314 S.W.3d 822, 833-34 (Mo.

App. W.D. 2010).

 We agree with Wife. Like Pickering, we lack “evidence of a marital debt or asset in

existence at the time of trial” and conclude “the trial court did not err in failing to divide these

alleged assets and liabilities.” Id. at 834. “Since we find that the trial court did not err in failing

to include these items in its judgment, we need not address any alleged jurisdictional defect.” Id.

 Point I is denied.

 Point II: Maintenance Award to Wife

 The trial court awarded Wife $5,000 per month in maintenance. Husband asserts the

maintenance award must be reduced because the trial court’s calculation of Wife’s expenses

improperly includes expenses related to the children. The maintenance award relied on Wife’s

expense statement, which Husband asserts contains four improper expenses “for the direct care

and support” of the children. First, Husband contests Wife’s monthly $566.27 expense for the

cost, insurance, and maintenance of their oldest son’s car. Second, Husband argues the

children’s monthly $225.82 cell phone bill should be excluded from the maintenance award for

the same reason. Third, Husband argues Wife’s $100 per month expense for cosmetics was a

shared expense with their daughter and should be reversed to the extent it exceeds Wife’s

personal needs. Finally, Husband challenges Wife’s $30 per month life insurance policy expense

because it benefits the children as the policy holders, not Wife. Husband notes we have held

 5
such policies are not to be included in the maintenance calculation. Arndt v. Arndt, 519 S.W.3d

890, 902 (Mo. App. E.D. 2017).

 Husband argues child support and spousal maintenance are separate concepts and

“maintenance is not for child support.” In re Marriage of Neu, 167 S.W.3d 791, 796 (Mo. App.

E.D. 2005). Husband argues Wife’s list of expenses commingles child support and maintenance,

violating this Court’s statement, “in determining a spouse's need for maintenance, the trial court

‘is not to consider any amounts expended for the direct care and support of a dependent child.’”

Id. (quoting Cohen v. Cohen, 73 S.W.3d 39, 51 (Mo. App. W.D. 2002)). Specifically,

maintenance awards should exclude “expenses for children's medical and dental insurance, car

insurance, vehicle, and college.” Courtney v. Courtney, 458 S.W.3d 462, 477 (Mo. App. E.D.

2015).

 Wife argues the car-related expenses and cell phone bills were properly included in the

maintenance award because she is the exclusive payor of those costs. Wife concedes such

expenses could have been shared costs included in the child support award but argues, “an exact

mathematical correlation between the reasonable needs of the requesting party and the amount of

maintenance ordered is not required.” In re Marriage of Ross, 231 S.W.3d 877, 886 (Mo. App.

S.D. 2007). Wife concludes the trial court was entitled to credit her testimony regarding her

cosmetic expenses and notes this Court will not reweigh the credibility of the evidence. Cohn v.

Cohn, 841 S.W.2d 782, 786 (Mo. App. E.D. 1992).

 We must reverse the trial court’s maintenance award for the children’s vehicle and cell

phone expenses. See Courtney, 458 S.W.3d at 477. Similarly, Arndt requires us to reverse the

life insurance portion of the maintenance award. 519 S.W.3d at 902. “Our caselaw is clear that

the requirement to pay premiums on a life-insurance policy is seen as a support obligation to the

 6
beneficiaries of the policy.” Id. However, the trial court was entitled to credit Wife’s testimony

regarding her cosmetic expenses. Sulkin, 619 S.W.3d at 159.

 Point II is granted. The trial court erroneously applied the law by including the cost of

the children’s vehicle, cell phone bills, and life insurance in Wife’s maintenance award, totaling

$822.09 per month. The court did not err by including Wife’s cosmetic expense in the

maintenance award. We instruct the trial court to recalculate the maintenance and child support

awards without commingling Wife’s and the children’s expenses.

 Point III: Wife’s Income and Maintenance Needs

 The parties presented conflicting evidence regarding their expenditures during the

marriage and Wife’s future maintenance needs. Husband claimed the parties spent about $8,000

per month during the marriage while Wife claimed their monthly expenses exceeded $18,000.

Husband argued Wife’s monthly maintenance should be $1,500-2,000 per month while Wife

calculated her monthly maintenance need at $10,000.

 The trial court rejected the parties’ conflicting calculations, finding them not credible.

The court found Wife’s reasonable monthly expenses are $9,500. In calculating Wife’s

reasonable expenses, the court included the costs discussed in Point II but excluded Wife’s

monthly credit card payments and child support funds. The court further reduced Wife’s

expenses by limiting her lawn care and discretionary expenses “to more sustainable post-divorce

levels.” The court explained Wife’s reasonable expenses exceed Husband’s because (1) “her

higher housing cost will allow her to acquire a residence for the children reasonably comparable

to the family residence to which they are accustomed;” (2) Wife has two car payments while

Husband’s vehicle is provided by his company; (3) Wife will incur new health insurance

 7
expenses while Husband’s health insurance is provided by his company; and (4) Wife has

monthly medical expenses. After accounting for Wife’s expected investment income of $1,230

per month, the trial court concluded her total monthly net income would be approximately

$5,230. After considering the statutory factors in Mo. Rev. Stat. § 452.335,2 the trial court

awarded Wife $5,000 per month in maintenance.

 Husband alleges the maintenance award exceeds Wife’s reasonable needs, improperly

enabling her to “build[] an estate or accumulat[e] capital.” Husband further claims the trial

court’s award combined with Wife’s stipulated income exceeds the court’s own calculation of

her reasonable needs.

 Husband first challenges the trial court’s determination Wife’s monthly net cash flow is

$4,000 because both parties’ experts calculated higher numbers: Husband’s expert calculated

Wife’s monthly net cash flow at $4,475.25 and Wife’s expert calculated it at $4,332. Husband

asserts the trial court’s calculation “improperly disregarded both parties’ analysis and arrived at

its own generic figure,” and was therefore unsupported by the evidence or the law. Further,

Husband argues Wife’s monthly net income must be at least $5,230 because the court found she

earns $1,230 per month in investment income. Husband concludes the court’s monthly cash

flow calculation contradicted its own findings because the court’s income ($5,230) plus

maintenance ($5,000) calculation equals $10,230 per month, exceeding Wife’s $9,500

reasonable monthly expenses by $730.

 Husband relies on Sulkin to argue Wife’s maintenance payment should be reversed

because it exceeds her needs. In Sulkin, the wife earned $2,667 per month and her reasonable

monthly expenses totaled $5,000. 619 S.W.3d at 158. The trial court ordered the husband to pay

2
 All statutory references are to RSMo (2020), unless otherwise indicated.

 8
$5,000 per month in maintenance. Id. This Court reversed the maintenance award and

remanded, holding it was (1) inconsistent with the trial court’s findings and (2) ambiguous

because the judgment was unclear whether the wife’s income was factored into the court’s

calculation of her reasonable monthly expenses. Id. Husband concludes the judgment here is

like Sulkin because the maintenance award contradicts the trial court’s calculation of Wife’s

reasonable expenses.

 Wife argues the trial court was entitled to disbelieve expert testimony and not required to

adopt either of the experts’ calculations of her post-tax income. Cohn v. Cohn, 841 S.W.2d 782

(Mo. App. E.D. 1992); In re Marriage of Holden, 81 S.W.3d 217, 224 (Mo. App. S.D. 2002).

Wife correctly notes the “trial court is deemed to know the tax law” and does not have to adopt

expert opinions. Sturgeon v. Sturgeon, 849 S.W.2d 171, 176 (Mo. App. E.D. 1993).

 We agree with Wife the trial court could disbelieve the parties’ expert opinions regarding

her income. See Cohn, 841 S.W.2d at 786. Notwithstanding the expenses explained in Point II,

the trial court’s findings regarding Wife’s income and monthly expenses are consistent with the

maintenance award. “The trial court need not perform an exact mathematical calculation and

may award a reasonable amount above the party’s itemized expenses.” Sulkin, 619 S.W.3d at

159.

 Sulkin is distinguishable on its facts. While the maintenance award this Court reversed in

Sulkin was approximately 50% greater than the trial court’s calculation of the wife’s reasonable

expenses, the maintenance award here exceeds Wife’s reasonable expenses by less than 8%.

Under section 452.335, the trial court could consider the parties’ financial resources, the time

necessary to find appropriate employment, the parties’ comparative earning capacity, the

standard of living established during the marriage, the division of obligations and assets, the

 9
duration of the marriage, the age, physical, and emotional condition of the maintenance-seeking

spouse, the ability of the maintenance-paying spouse to meet their needs, the parties’ conduct

during the marriage, and any other relevant factors. Wife is the custodial parent and has incurred

multiple significant expenses Father’s job pays on his behalf. Excepting the expenses discussed

in Point II, the maintenance award is supported by substantial evidence and does not provide for

an accumulation of capital. Id. at 160.

 Point III is denied.

 Point IV: Husband’s Income

 Husband earns a salary, discretionary bonus, and pass-through income as a shareholder of

his company. The trial court found Husband’s three-year average annual gross income was

$337,474 ($28,123 per month). After considering state and federal taxes, the trial court found

Husband’s monthly net income is $20,811 and his reasonable monthly expenses are $4,739. The

court concluded Husband could pay $5,000 in maintenance per month while comfortably

maintaining or upgrading his standard of living.

 Husband disputes the court’s findings regarding his capacity to pay maintenance and

child support because his earnings from distributions were overestimated. Husband notes he has

no control over the frequency or size of his company’s distributions and claims “throughout the

marriage, any distributions he received were paid to the government for estimated tax purposes.”

Husband claims he uses funds received through distributions for taxes and cannot regularly

access them to pay bills, including maintenance and child support.

 Husband first argues the court’s distribution income calculations were internally

inconsistent because the court “[found] that it is not appropriate to include 100% of the

 10
distributions in [Husband]’s income,” yet calculated his gross income based on 100%

distribution. Husband claims “the trial court specifically included in Father’s income for support

purposes 100% of the gross three year average of the distributions . . . . $105,799.” Second,

Husband argues the trial court miscalculated his state and federal tax rate at 26% when it is at

least 33%. Husband concludes he cannot comply with the judgment because it exceeds his

ability to pay and is based on inconsistent and ambiguous findings.

 Wife argues Husband’s claimed cash flow difficulties are contradicted by his own

expert’s estimates and the trial court’s findings with no need to recalculate his disputed business

income or tax rate. She argues even if the trial court overestimated Husband’s monthly net

income and underestimated his tax obligation, Husband’s income projections will maintain

positive cash flow after paying maintenance and child support at their current rates.

 Husband’s first argument mischaracterizes his expert’s testimony, the record, and the

judgment. While Husband claims the trial court’s $105,799 figure distribution figure constitutes

his three-year average gross distribution income, our review of the record reveals Husband is

incorrect. On direct examination, Husband’s expert testified Husband’s five-year net distribution

average was $74,269 from 2014-2018. On cross-examination, Husband’s expert conceded

removing the 2014 and 2015 net distributions from the $74,269 five-year average would increase

Husband’s three-year average net distribution income to approximately $105,000 – the figure

Husband now claims constituted gross distribution income.

 The judgment is consistent with the trial court’s statement it would not use 100% of

Husband’s distribution income to calculate total income. By Husband’s expert’s calculation and

admission, the $105,799 distribution income figure is 100% of Husband’s three-year average net

distribution income, not 100% of his three-year average gross distribution income. It is therefore

 11
not contradictory or internally inconsistent. We will not reweigh the evidence or substitute the

trial court’s judgment of witness credibility with our own. Sulkin, 619 S.W.3d at 159.

 Regarding Husband’s tax arguments, the trial court is presumed to know the tax law and

did not have to accept Husband’s expert’s calculations of his tax liability. Marriage of Holden,

81 S.W.3d at 224; Sturgeon, 849 S.W.2d at 176. On remand, the trial court need not recalculate

Husband’s income.

 Point IV is denied.

 Point V: The Stipulated Child Custody Arrangement

 On January 9, 2020, the parties agreed to a joint legal and physical custody arrangement

for their three youngest children, providing Mother would be the custodial parent and Father

would have visitation six of every fourteen overnights. Father and Mother could not agree to a

custody schedule for their oldest child. The trial court found the stipulated custody schedule for

the youngest three children was in their best interest, but modified stipulated provisions

governing transportation arrangements, holiday scheduling, and vacations. The parties agree the

inconsistencies between the stipulated agreement and the judgment were likely inadvertent and

should be resolved on remand by adopting the original agreement.

 We agree the trial court’s failure to adopt the stipulated agreement was likely inadvertent.

Although the trial court does not have to accept custody agreements, if the agreement is rejected,

the court must make written findings regarding the children’s best interests under section

452.375, “detailing the specific relevant factors resulting in the rejection of such arrangement.”

The court made no such findings. On remand, we instruct the trial court to accept the stipulated

 12
custody agreement as written or alternatively, if the court chooses to modify the agreement, the

court must make the written findings required by section 452.375(6).

 Point V is granted.

 Point VI: Child Support

 Both parties submitted proposed Form 14 child support calculations. The trial court

rejected both proposals and entered its own. The court rejected Father’s proposed visitation

credit because the parties’ oldest child spends no time in his custody. The court also rejected

Mother’s proposal Father receive a 20% credit for the three youngest children and calculate their

oldest child’s support separately at 0% visitation. The court reasoned child support does not

increase on a linear, per capita basis because some expenses covered by child support such as

housing are fixed costs. Instead, the court applied the 20% visitation credit to each child for a

presumed amount of $1,785 per month for four children, then increased the support figure by

20% to eliminate the oldest child’s visitation credit.

 Father argues the trial court miscalculated his child support obligation under the two-step

analysis provided in Barden v. Barden, 546 S.W.3d 582, 592 (Mo. App. E.D. 2018) (“Barden

II”). Under Barden II, the trial court must first “calculate the child support amount pursuant to

the Form 14, either by accepting one of the parent’s Form 14 calculations or by performing its

own Form 14 calculation.” Id. (citing Malawey v. Malawey, 137 S.W.3d 518, 526-27 (Mo. App.

E.D. 2004)). “Second, the trial court must consider all relevant factors to determine whether to

rebut the presumed Form 14 amount as being unjust and inappropriate.” Id. (citing Fowler v.

Fowler, 504 S.W.3d 790, 801 (Mo. App. E.D. 2016)).

 13
 Father contends the trial court (1) miscalculated his presumed child support obligation

and (2) erred in its deviation from the presumed child support figure, violating both Barden II

steps. First, Father argues the court’s Step 1 analysis was flawed because his income was

miscalculated. See Point IV, supra. Second, Father argues the trial court improperly rejected the

parties’ stipulated visitation credit agreement, which provided Father would receive a 34%

visitation credit for the three youngest children and did not stipulate to a visitation credit for their

oldest child. Father argues the trial court ignored the stipulation and had no basis for applying a

20% visitation credit, then reducing the effect of the credit by increasing his support obligation

20%. Relying on the stipulation, Father argues he is entitled to a visitation credit of at least

25.5%.3 Finally, Father argues the trial court’s calculations failed to consider the impact of

January 1, 2018 changes to the federal tax code’s exemptions for child support paid and

received. Father concludes the child support award is arbitrary and unsupported by the evidence

because the trial court selectively approved provisions of the parties’ stipulation while

disregarding other provisions.

 Mother argues the parties’ support stipulation was nonbinding and the trial court’s failure

to adopt it is irrelevant. Mother notes this Court has stated agreements regarding child support

are “advisory only, because the ultimate responsibility for fashioning a decree which reflects the

best interests of the child rests with the court.” Arent v. Arent, 759 S.W.2d 855, 856 (Mo. App.

E.D. 1988); see also Blackburn v. Mackey, 131 S.W.3d 392, 399 (Mo. App. W.D. 2004).

 Mother next argues the trial court did not err by rejecting the parties’ Form 14

submissions and completing its own because the court explained its calculations. Mother notes

the trial court may use its discretion to determine support when the presumed child support

3
 Father’s proposed calculation provides: (34%+34%+34%+0%)/4 children = 25.5%.

 14
figure is unjust or inappropriate. Olson v. Olson, 559 S.W.3d 395, 400 (Mo. App. S.D. 2018).

Mother concludes the court’s explanation of its visitation credit adjustment therefore satisfies our

standard of review.

 As explained in Point IV, the trial court’s calculation of Father’s income was correct and

therefore did not violate Barden II Step 1. We agree with Mother the trial court acted within its

discretion to reject the parties’ stipulated child support arrangement and did not violate Step 2 by

independently calculating Father’s support obligation. See Blackburn, 131 S.W.3d at 399.

Father cites no law supporting his position regarding the effect of the 2018 changes to the federal

tax code. Although the total support award was an abuse of discretion to the extent certain funds

were erroneously included in the maintenance award as explained in Point II, the court’s

visitation credit formula was supported by the evidence, not unjust or inappropriate, and did not

constitute a manifest abuse of discretion. Mosier, 83 S.W.3d at 16.

 Point VI is denied, but the trial court’s recalculated maintenance award may affect the

child support award. We instruct the trial court to enter a support order consistent with Father’s

recalculated maintenance obligation as explained in Point II.

 Point VII: College Expenses

 The trial court’s judgment provided “the cost of college shall be split in relative

proportion to the incomes of the parents after application of any amounts in 529 accounts for the

children.” Father challenges the judgment on two grounds.

 First, Father argues the trial court was required, but failed to analyze five factors

necessary to determine whether and to what extent college expenses should be included in child

support under Barden v. Barden, 463 S.W.3d 799 (Mo. App. E.D. 2015) (“Barden I”). The

 15
factors are: (1) the financial ability of the non-custodial parent; (2) the ability and capacity of the

child for college work; (3) the nearness of the child to the age of majority; (4) whether the child

is self-supporting; and (5) the non-custodial parent’s willingness to provide for such education,

as shown by some agreement or other indication on his or her part. Id. at 806. Second, Father

argues the division of college costs will change if his income is calculated on remand.

 Father claims his obligation to pay college expenses must be reversed because the

judgment consists of only two sentences and has no analysis of the Barden I factors. Father

argues the factors would show he lacks the resources to pay for his children’s college,

particularly because he already made a large cash equalization payment to Mother under the

judgment. Father again claims the trial court miscalculated his income and argues a downward

adjustment would reduce his out-of-pocket college costs.

 Mother argues Father’s Barden I claim is unpreserved because he did not raise it to the

trial court or in post-trial motions to amend the judgment. Mother notes Father only challenged

the parties’ proportional shares of the children’s college costs. Mother emphasizes no statute

required the trial court to explicitly analyze the Barden I factors and argues Father should have

requested such findings. Mother argues the trial court’s silence regarding the Barden I factors is

immaterial because this Court has held, “[w]here the trial court did not make a specific finding

regarding a disputed factual issue, we consider that fact found in accordance with the result

reached.” Dickerson v. Dickerson, 580 S.W.3d 98, 102 (Mo. App. E.D. 2019).

 We agree Father’s Barden I claim is unpreserved. “We will not convict a trial court of

error for an issue not presented for its determination.” Fouts v. Regency N. Acquisition, LLC,

569 S.W.3d 463, 466 (Mo. App. W.D. 2018). Father’s argument is therefore limited to the trial

court’s division of college costs between the parties. As explained in Point IV, the trial court did

 16
not miscalculate Father’s income and therefore need not recalculate Father’s proportion of the

children’s college costs. Given Father’s income, we are particularly unpersuaded by Father’s

claim his share of the children’s college expenses will push him to “financial disaster.”

 Point VII is denied.

 Point VIII: Retroactive Child Support to Mother

 The parties’ PDL provided beginning in January 2019, Father would pay $8,000 per

month in maintenance and child support while their dissolution case was pending. The parties

agreed the $8,000 per month arrangement did not waive either parent’s right to seek retroactive

support. In its judgment, the trial court found Father paid only $5,200 per month in January and

February of 2019, a shortfall of $5,600. The court ordered Father to pay the outstanding balance.

 Father challenges the trial court’s order, arguing the record shows he complied with the

PDL and paid Mother in full for January and February 2019. Father notes he paid two checks to

Mother totaling $16,316 on December 28, 2018 and February 11, 2019. The checks’ memo lines

stated: “Jan + Dec Expenses 2019” and “Jan. Adjustment + Feb 2019.” Father argues the trial

court misunderstood Mother’s request for retroactive support; he alleges Mother’s request was

premised on her position support should be increased to $10,000 per month, not that Father

failed to pay according to the PDL.

 Mother claims “it is impossible to tell from the documents produced whether [Father’s]

payments included the $8,000 ordered by the court in the PDL.” We disagree. The checks

admitted into evidence establish Father’s support payments complied with the PDL. Nothing in

the record – including Mother’s testimony – suggests Father failed to pay his January and

February 2019 support obligations in full. Contrary to Mother’s position, Father’s briefing

 17
directed this Court to uncontroverted evidence in the record establishing he paid more than

$16,000 for January and February 2019. The trial court’s finding Father did not pay his support

obligations in full was therefore unsupported by substantial evidence and against the weight of

the evidence. Sulkin, 619 S.W.3d at 159.

 Point VIII is granted.

 Point IX: Child Support Overpayment Credit to Father

 Father paid Mother $8,000 per month for maintenance and child support under the PDL

beginning in January of 2019. His monthly maintenance and child support obligation under the

judgment totals $7,342. As explained in Point VIII, he owes no retroactive support. The parties

agreed the PDL did not waive their respective rights to challenge the support awarded or seek

retroactive changes to the support order. Father contends he is entitled to a credit for past

overpayment because (1) his PDL payments exceeded his current support obligation and (2) our

holding in Point II may reduce his support obligation further on remand.

 Child support credits are treated differently depending on whether they involve past or

future support obligations. This Court has stated:

 Missouri law treats the question of a party’s entitlement to a credit for child

 support overpayments differently depending on whether the party is seeking a

 credit against future as opposed to retroactive child support obligations. The

 general rule is that a party who overpays child support may not claim those

 payments as a credit against future child support obligations if the overpayment

 was voluntarily made. But a party is entitled to a credit against retroactive child

 18
 support obligations for overpayments made between the time of separation and

 the time of trial, even if the overpayments were found to be voluntary.

 Eichacker v. Eichacker, 596 S.W.3d 177, 187 (Mo. App. E.D. 2020) (emphasis in

original) (internal citations omitted). The Eichacker Court also noted the general rule has an

exception: “in Missouri, an overpayment is presumed voluntary and may not be credited against

future support obligations unless the parties have agreed to such an arrangement or when other

equitable considerations exist.” (emphasis added). Id.

 Father argues he is entitled to a prospective support credit because the PDL is an

agreement subject to the exception under Eichacker. Father relies on the PDL’s retroactivity

provision, which states: “the parties agree that the court may order maintenance and/or child

support entered in a final judgment to be retroactive to 6/21/18. Such retroactivity may include

an increase, decrease, or no change in the PDL support entered in 2/1/19.”

 Mother raises two arguments in reply. First, she relies on the PDL’s permissive language

to argue the trial court was not required to give Father a support credit for overpayment.

Second, Mother relies on In re Marriage of Nardini to argue the trial court lacks statutory

authority to modify the maintenance portion of the award because section 452.335 does not

permit retroactive modifications to maintenance. 389 S.W.3d 303, 304 (Mo. App. S.D. 2013).4

 Mother’s first argument is dispositive. The PDL’s retroactive modification language was

permissive, not mandatory. Although Father is correct the trial court could have awarded

prospective support credit under Eichacker and Richmond, the PDL did not require the court to

do so. The parties agreed the trial court could retroactively enter a support award in its final

4
 We note Mother’s reliance on Nardini is misplaced. The PDL is governed by section 452.315, which provides
temporary maintenance awards may be retroactive. Richmond v. Richmond, 164 S.W.3d 176, 178 (Mo. App. E.D.
2005).

 19
judgment greater than, less than, or equal to the amount provided in the PDL. Although the court

made no specific findings explaining why it chose not to retroactively credit Father for his PDL

payments, we interpret the court’s silence in a manner consistent with the judgment. Sulkin, 619

S.W.3d at 159.

 Point IX is denied.

 Point X: Wife’s Bank Accounts

 The parties disputed whether two bank accounts ending in *7496 and *5005 held jointly

between Wife and Wife’s mother were marital property. In its judgment, the court found

“[t]here was no evidence that any marital funds were ever deposited into these accounts. [Wife’s]

name appears on those accounts simply as a convenience for her mother.”

 Husband challenges the trial court’s findings and claims the court improperly shifted the

burden of proof. First, Husband argues Wife was required to prove the accounts were separate

property by clear and convincing evidence and claims the judgment’s reference to the absence of

evidence improperly shifted the burden onto him. Thorp v. Thorp, 390 S.W.3d 871, 876 (Mo.

App. E.D. 2013). Husband argues the court was required to presume the accounts contain

marital property and asserts Wife could not have overcome the presumption through the absence

of evidence.

 Second, Husband argues Wife’s financial disclosures and pre-trial deposition testimony

about the *7496 account contradicted her trial testimony. Wife listed the account as marital

property in three pretrial disclosures. At her deposition, Wife testified her mother had no access

to the funds. At trial, Wife testified the pretrial disclosures were incorrect and claimed she

 20
misspoke at deposition because she confused the account numbers. Husband argues the trial

court should not have credited Wife’s inconsistent trial testimony.

 Third, Husband argues Wife failed to prove the *5005 account was separate property.

Husband notes the account was not listed on any pretrial disclosures, yet the address associated

with the account was the parties’ marital home. Husband concludes Wife did not meet her

burden of proving the account was separate property because she presented no evidence

establishing the source of the funds.

 Wife relies on her trial testimony and argues she established (1) the funds in the *7496

account belong solely to her mother; (2) her contrary testimony at deposition was inadvertent;

and (3) she was unaware of the *5005 account and never deposited or withdrew funds from it.

Wife notes this Court does not reweigh the evidence or the trial court’s witness credibility

determinations. Sulkin, 619 S.W.3d at 159.

 Husband’s arguments rely on the credibility of witness testimony and the weight of the

evidence. Contrary to Husband’s claims, Mother’s testimony regarding the accounts was the

evidence the trial court relied on. Although the trial court made no explicit credibility findings,

we interpret them having been found in accordance with the judgment. Id. We will not reweigh

the trial court’s judgment of witness credibility. Id. Our standard of review therefore requires us

to conclude the trial court found Wife’s trial testimony credible and sufficient to rehabilitate her

earlier inaccurate testimony and disclosures.

 Point X is denied.

 21
 Point XI: Dissipated Funds

 Between October 2017 and July 2019, Husband paid $262,379 in support. However,

Wife only deposited $148,858 into her bank account, leaving $113,520 unaccounted for.5

Husband argues Wife squandered the remaining funds and her portion of the marital property

should therefore be reduced.

 The trial court found Wife did not squander the funds. The court credited Wife’s

testimony she spent $25,570 on home repairs; $4,244 to repay a loan from her brother for a

mortgage payment; and the remaining $82,706 for personal expenses for herself and the

children.6 The court found the allegedly missing personal expenses were consistent with the

level of financial support Wife required because she did not attain employment until the

beginning of the 2019-2020 school year.

 Husband argues Wife’s testimony was inconsistent with her bank records, which he

argues establish she paid some personal expenses and construction bills from her bank account.

While Husband concedes the trial court was entitled to make credibility findings regarding the

$25,570 Wife testified she spent on home repairs, he argues it was Wife’s burden to present

evidence explaining the other missing funds. Husband relies on Pickering, in which the Court of

Appeals for the Western District stated:

 A spouse, claiming that a marital asset is being secreted or squandered . . . must

 introduce evidence demonstrating that there existed at some point a marital asset,

 which is being secreted or squandered. Once such evidence is introduced, while

 the burden of proof remains with the spouse claiming that the other has secreted

5
 We note the trial court’s calculation is off by $1, though it is unclear which number is wrong.
6
 The expenses the trial court found the missing money went to adds to $112,520, a $1,000 discrepancy. Again, the
record is unclear which number is incorrect.

 22
 or squandered the marital asset in question, the burden of going forward with the

 evidence shifts to the other spouse to account for the claimed secreted or

 squandered asset by presenting evidence as to its whereabouts or disposition.

314 S.W.3d at 830. Husband claims Wife’s testimony alone was insufficient to explain the

missing funds, arguing it is “astonishing that there is absolutely no paper trail.”

 Wife argues her testimony established she used the allegedly missing funds to pay her

monthly expenses in cash. Wife testified Husband unilaterally reduced his pre-PDL monthly

support payments from $8,000 to $5,200 in August of 2018, causing Wife’s expenses to exceed

the support payments.7 Wife testified she began cashing the support checks instead of depositing

them because she did not yet have a job and had no other way to cover expenses. Wife noted the

mortgage payment on the parties’ marital home was more than $4,200 per month, leaving less

than $1,000 for all other monthly expenses. Wife concludes the record supports her testimony

and again reminds us we do not review the trial court’s credibility determinations. Sulkin, 619

S.W.3d at 159.

 We agree with Wife we cannot replace the trial court’s judgment of witness credibility

with our own. Id. Contrary to Husband’s contentions, Wife’s testimony was evidence of how

the allegedly missing money was used. Our standard of review requires us to defer to the trial

court’s conclusion Wife’s trial testimony was credible. Id.

 Point XI is denied.

7
 The PDL went into effect in 2019.

 23
 Point XII: Husband’s Bank Account

 The parties agreed their marital property should be divided evenly by value. To equalize

the assets, the trial court ordered Husband to transfer $346,311 to Wife. Husband challenges the

trial court’s division of funds held in one of his bank accounts, arguing the court’s calculations

were not supported by substantial evidence and affected his cash equalization payment.

 At trial, the account’s balance was $93,293. Husband asserts the balance was artificially

inflated and worth less than its assigned value. Husband specifically complains the balance

includes (1) a tax refund; (2) funds Husband paid to Wife via check she did not cash until after

the balance was calculated; and (3) a bonus Husband received from his job.

 In 2018, the parties received a tax refund and divided it evenly, with each receiving

approximately $44,000. Husband testified he deposited his half of the refund into his bank

account, causing it to be counted in the balance when the trial court divided the property.

Husband claims Wife never accounted for her half of the refund and the court did not factor it

into the division of property, meaning her property was undervalued by $44,000. Second,

Husband claims Wife failed to timely deposit two $8,000 checks he paid her for support in

December 2019 and January 2020. Husband argues Wife’s delay artificially inflated his account

balance by $16,000 because the funds had not yet transferred but no longer belonged to him.

Third, Husband challenges the trial court's calculation of the value of his December 2019 bonus.

Husband argues Wife received half of the bonus but the court calculated his support obligation as

though he retained the entire balance, enabling Wife to “double dip.”

 24
 Wife argues the trial court did not err in its division of property and characterizes

Husband’s argument as an unsubstantiated claim he would have received a more favorable

property distribution had the trial court reviewed the parties’ account balances on a different day.

 We agree with Wife. Neither Husband’s briefing nor this Court’s research reveal a case

supporting his contention the bank account is entitled to a different valuation. The trial court’s

calculation was supported by substantial evidence and nothing in the record supports Husband’s

claim he faces a “financial disaster.”

 Point XII is denied.

 Point XIII: Husband’s Retirement Account Values

 The values of Husband’s retirement accounts were relevant to the trial court’s division of

the parties’ assets. In early January 2020, the parties stipulated Husband had two retirement

accounts with a cumulative value of $405,469.65. The parties’ divorce trial coincided with the

beginning of the COVID-19 pandemic in January of 2020. The pandemic affected global

markets and the value of the accounts declined. On April 29, 2020, Wife moved to reopen the

evidence so the accounts could be revalued to reflect their decreased value. On May 8, 2020, the

trial court granted Wife’s motion to reopen the evidence and found their new value was

$378,097. On June 3, 2020, the trial court entered its judgment and awarded Wife both accounts

using their May valuation. Both parties filed post-trial motions to reopen the evidence and for

new trial. The original judge passed away in August 2020 with the parties’ motions pending. In

September 2020, the successor trial judge denied the post-trial motions, finding “it would be

difficult at best to rule” without having participated in the case up to that point. The successor

 25
judge further urged the parties to resolve their disagreements through mediation rather than

appeal.

 Husband argues the trial court erred by valuing his retirement accounts at one of their

lowest points in the pandemic – approximately $27,372 less than their stipulated value at trial –

without granting his post-judgment motion to reopen the evidence and account for their recovery.

Husband argues the May 2020 account values are stale because the market rebounded shortly

thereafter, and the accounts are now worth more than they were at trial. He argues Wife received

a windfall because (1) she took the accounts at less than their stipulated or present values and (2)

the depressed value of the accounts increased Husband’s cash equalization payment. Husband

reasons it was inequitable for the court to grant Wife’s pre-judgment motion to reopen the

evidence and update the account values, but his post-judgment motion to do the same was

denied.

 Husband relies on Schubert v. Schubert to argue he was materially prejudiced by the trial

court’s valuation of the retirement accounts. 366 S.W.3d 55, 73 (Mo. App. E.D. 2012). He notes

we will only reverse “when the error is material – that is, ‘there must be facts in the record from

which potential prejudice reasonably could be inferred and each case is therefore fact specific.’”

Id. (quoting McCallum v. McCallum, 128 S.W.3d 62, 66-67 (Mo. App. E.D. 2004)). Husband

reasons the pandemic’s unique temporary effect on the markets and the trial court’s decision not

to reconsider its property division after the account values rebounded constituted material

prejudice.

 Wife argues the decreased values of Husband’s accounts were not material and the May

8, 2020 account values were not stale. Wife notes the trial court used the most up-to-date

 26
possible data, entering its judgment less than one month after receiving the updated account

values. Wife concludes the trial court was therefore not obligated to reopen the evidence again.

 We agree with Wife the May 2020 account values were not stale – they were less than

one month old when the trial court entered its judgment. This Court’s research revealed no case

holding one-month-old account values stale. We have affirmed stock valuations significantly

older than those the court used here. See, e.g., Fowler v. Fowler, 504 S.W.3d 790, 801 (Mo.

App. E.D. 2016) (eight-month-old financial information was not stale). We commend the trial

court for entering its judgment promptly after receiving the updated evidence and decline to hold

account values calculated less than one month before a judgment was entered are stale.

 Point XIII is denied.

 Point XIV: Vehicle Valuation

 The parties dispute the value of their 2007 GMC Yukon. At the beginning of trial in

October 2019, the parties agreed it was not operational and had a fair market value of $2,000.

However, on the last day of trial in January 2019, Husband testified the Yukon “passed

inspection a few weeks ago and is in my opinion moving. And it's been moved in several

different parts of the driveway so it seems to be operating fine.” Husband admitted he had not

driven the Yukon, seen anyone else drive it, and personally did not know whether it moved under

its own power. Husband further admitted his belief the Yukon was operational was based solely

on the facts it passed inspection and he saw it parked in different places on Wife’s driveway.

The trial court rejected Husband’s testimony, finding he had “no real evidence to rebut [Wife’s]

statement that the vehicle was not operational.”

 27
 Wife notes Husband’s argument again hinges on the credibility of the witnesses. Wife

further argues Husband’s testimony was speculative and he lacked personal knowledge or

documentary evidence supporting his claims the Yukon is operational and worth $10,000. We

will not reweigh the trial court’s judgment of witness credibility. Sulkin, 619 S.W.3d at 159.

 Point XIV is denied.

 Point XV: Division of Debt

 Husband challenges the trial court’s division of credit card debt, arguing the judgment

ignored undisputed evidence Wife improperly spent money on Husband’s credit cards. Husband

claims (1) Wife alone incurred debt on their Sam’s Club Mastercard and (2) Wife admitted she

violated the PDL agreement not to use credit cards held in each other’s names when she charged

$5,500 in attorney’s fees to one of Husband’s other cards. The judgment found:

 Each of the parties also has credit card debt in their individual names. Father’s

 total credit card debt is $22,784. Mother owes a total of approximately $38,743

 on four credit cards. The parties agreed that each of them would be responsible

 for the amounts owed on their respective credit cards which is appropriate since

 the credit card debt has been incurred post separation. In addition, a substantial

 portion of the credit card debt owed by Mother represents attorney fees.

 Husband challenges the trial court’s statement the parties agreed to be responsible for

their respective cards’ post-separation debt. He argues he never conceded he should pay the

$5,500 charge Wife admitted she improperly spent on his card. Husband concludes the judgment

should be amended to either require Wife to reimburse Husband or reduce his equalization

payment by $5,500.

 28
 Wife does not deny she violated the PDL by improperly spending $5,500 on Husband’s

credit card for attorney’s fees. Instead, she argues the PDL was an independent proceeding and

Husband should have moved to cite her for contempt when the violation happened. Regarding

the disputed Mastercard debt, Wife argues the debt was incurred during the marriage and

Husband’s lack of control or participation “does not preclude its allocation to that spouse where

it is determined to be marital debt.” Rogers v. Rogers, 253 S.W.3d 134, 138 (Mo. App. W.D.

2008). Wife concludes the trial court acted within its broad discretion to divide the debt.

 We agree with Wife the trial court did not err in its division of debt. “Appellate courts

will interfere in marital property divisions only where the division is so unduly favorable to one

party that it constitutes an abuse of discretion.” Lollar v. Lollar, 609 S.W.3d 41, 46 (Mo. banc

2020). As Wife notes, Husband’s remedy for her PDL violation was to move to cite her for

contempt, not to adjust the distribution of debts on appeal of the final judgment. See Dardick v.

Dardick, 661 S.W.2d 538, 540 (Mo. App. E.D. 1983) (“It is well established in Missouri that

orders on motions to allow maintenance and suit costs pendente lite are judgments in

independent proceedings.”) The trial court had broad discretion to divide marital debt and the

division need not be equal. Petties v. Petties, 129 S.W.3d 901, 911 (Mo. App. W.D. 2004).

 Point XV is denied.

 Point XVI: Equity

 In Point XVI, Husband argues if we reverse any of Points X-XV, the trial court’s cash

equalization order must be recalculated on remand. Finding no error in Points X-XV, we need

not consider Point XVI.

 Point XVI is denied.

 29
 Conclusion

 We affirm in part and reverse in part. Points II, V, and VIII are granted. Points I,

III, IV, VI, VII, IX, X, XI, XII, XIII, XIV, XV, and XVI are denied. We remand and

instruct the trial court to recalculate (1) Husband’s maintenance and child support

obligations and (2) the child custody arrangement in a manner consistent with this

opinion.

 _______________________________
 Philip M. Hess, Presiding Judge

Angela T. Quigless, Judge and
Colleen Dolan, Judge concur.

 30