Mark D. Pfeiffer, Judge
Mr. Cedric D. Mack ("Mack") appeals from the Judgment of the Circuit Court of Harrison County, Missouri ("trial court"), finding him guilty, following a jury trial, of one count of driving while intoxicated in violation of section 577.010.[1] In his sole point on appeal, Mack asserts that the trial court erred in overruling his motion to suppress and admitting at trial evidence of his statements to the arresting officer that he had been drinking and there was a beer can in his car. He contends that the trial court's ruling violated his privilege against self-incrimination. He argues that his statements should have been suppressed because they were involuntary and made as a result of custodial interrogation before he had been given Miranda[2] warnings. We affirm.
Facts and Procedural History[3]
On October 21, 2016, Missouri State Highway Patrol Corporal Benjamin Hillyard was working the evening shift in Harrison County when he received a call from dispatch describing a silver vehicle with black racing stripes and Iowa license plates driving in a careless and imprudent manner northbound on Interstate 35. Corporal Hillyard saw a vehicle matching that description travelling northbound and then slowing down and stopping halfway on the shoulder and halfway in the driving lane. He watched the vehicle pull back onto the highway and continue northbound. The patrol car's dash camera video recorded activity *31 inside and outside of the patrol car. Corporal Hillyard pursued the vehicle and activated his lights. The vehicle pulled off onto the shoulder of the road and parked on the white fog line. Corporal Hillyard parked ten to fifteen feet behind the vehicle. When Corporal Hillyard approached the vehicle from the passenger side, he detected the odor of alcohol emanating from the vehicle. Corporal Hillyard asked the driver for his driver's license, but the driver gave Corporal Hillyard a credit card. Corporal Hillyard again requested the driver's license, but the driver was unable to produce one.
Corporal Hillyard then asked the driver to turn the vehicle off and come back to his patrol car. After the driver exited his vehicle, Corporal Hillyard observed that the driver stumbled and swayed as he walked to the patrol car. When the driver was in the patrol car, Corporal Hillyard detected the odor of alcohol coming from the driver's person and noticed that the driver's speech was slurred and his eyes were bloodshot.
Corporal Hillyard asked the driver to perform a preliminary breath test, but he refused. Because the driver did not have a license on his person, Corporal Hillyard asked the driver his name. The driver gave the trooper a false name. Corporal Hillyard ran a computer check and told the driver that the descriptors and the picture did not match him. When Corporal Hillyard ran the vehicle's license plate, he discovered that the vehicle was registered to Mack. Mack then gave Corporal Hillyard his true identity.
A back-up patrol car arrived and parked behind Corporal Hillyard's patrol car. Corporal Hillyard asked Mack to recite the alphabet from A to Z without singing it. Mack's speech was slurred, and he missed several letters, saying "SWVXYZ now I know my ABC's, would you sing them to me? That's how we used to do it as a kid, right?" Next, Corporal Hillyard asked Mack to count backwards from 64 to 48. Mack counted slowly and used his fingers for every number. He counted correctly but his speech was slurred. Finally, Corporal Hillyard administered horizontal and vertical gaze nystagmus tests. Mack had six of six clues on the horizontal gaze and two of two clues on the vertical gaze, which indicated to the officer that Mack was impaired by either alcohol or drugs. Corporal Hillyard again asked Mack to perform a preliminary breath test, but he refused.
Corporal Hillyard then asked Mack to step out of the patrol car to perform additional field-sobriety tests. In the presence of the second officer, Corporal Hillyard instructed Mack how to perform the one-leg stand, which Mack was unable to complete successfully. Next, Corporal Hillyard instructed Mack how to perform the walk-and-turn test, which Mack was unable to complete after multiple attempts. Following these tests, Corporal Hillyard placed Mack under arrest for driving while intoxicated and handcuffed him. Corporal Hillyard asked Mack for permission to move Mack's vehicle off the road and onto the grass, and Mack consented. Corporal Hillyard had Mack sit in the front passenger seat of the patrol car. At this point, an exchange occurred between Corporal Hillyard and Mack, the admission of evidence of which Mack challenges on appeal, to-wit:
HILLYARD: Is there anything illegal in your car? Any firearms? Any drugs?
MACK: [Shakes his head no.]
HILLYARD: Nothing at all?
MACK: [Shakes his head no.]
HILLYARD: Can I search the vehicle?
MACK: [Shakes his head no.]
*32 HILLYARD: Can't search it?
MACK: No.
HILLYARD: Okay. But do you give me permission to at least go in there and move it?
MACK: Uh, no.
HILLYARD: No, I can't do that? Okay. We are going to tow your vehicle because I can't leave it just sitting right there.
MACK: Well, you can move it then, as long as you're, as long as you're not going to search it you can move it.... You've been honest ... you said you're going to move my vehicle I said move it ok you said just move it ok you can move it.
HILLYARD: Now, I'm just thinking about my different options I have, okay. Because you have been drinking, I can look for alcohol in there. So, I can search your vehicle and look for alcohol okay? If I happen to find something else in an area where alcohol could be found, then that's part of it, okay? So I am going to search your vehicle, just to see if I can find any alcohol in there, because you are telling me you're not drinking and you won't [submit to a preliminary breath test]. So I am going to do that, okay? If I can still move it over, once I'm done with that, that'd be great. If not, I'm going to have to tow it, of course. So after I get done looking for alcohol in there, can I move it over?
MACK: So you're looking for alcohol?
HILLYARD: Yes, I am going to search your vehicle, okay? Because if there is alcohol in there, and you're refusing to give me, you know, a breath sample, and I can smell alcohol, this is just me corroborating everything. I am allowed to do that, okay? So, I'm going to go ahead and search it then make sure ...
MACK: Okay, man, look, I've been, I've been drinking.
HILLYARD: Yes. Yes. I know that.
MACK: Okay, I've been drinking. So you can move my vehicle.
HILLYARD: I can move your vehicle?
MACK: I've been drinking; you might find a beer in there.
HILLYARD: Okay. Alright.
MACK: I've been drinking. Okay, that's what you want to hear? I've been drinking.
HILLYARD: Well, it's alright if I move your vehicle then?
MACK: Yeah. You might find a beer. If you want to search it, you're not going to find [any] drugs or [any] guns. You'll find a beer, you might find a beer in there.
HILLYARD: Okay. Alright, that sounds, that sounds fine. I'll be right back with you.
Prior to moving Mack's vehicle, Corporal Hillyard searched the vehicle. He found an open, empty alcohol container in the back seat of the vehicle, but he did not check to see if it was wet or dry and did not seize it as evidence. Corporal Hillyard moved Mack's vehicle further off the side of the road. When Corporal Hillyard returned to his patrol car, he read Mack the Miranda warnings. Corporal Hillyard also read Mack the warning required under the implied consent statute, section 577.041. Mack refused to take the breath test. Before Corporal Hillyard transported Mack to the Harrison County Jail, Mack fell asleep.
The State charged Mack as a prior and persistent offender with one count of driving while intoxicated and one count of driving while his license was suspended or revoked. The prosecutor dismissed the second count prior to trial. Mack moved to *33 suppress his statements to Corporal Hillyard that he had been drinking and there may be a can of beer in his vehicle, arguing that they were made in response to a custodial interrogation prior to being advised of his Miranda rights. In response, the State argued that Mack's statements were voluntarily made and not in response to a specific question by the arresting officer. The trial court denied Mack's motion to suppress, finding that Mack's statement was voluntary.
The dash camera video containing Mack's statements was offered by the State at trial, admitted into evidence over Mack's objection, and played for the jury. The jury found Mack guilty. Mack's motion for new trial included an allegation that the trial court erred in admitting into evidence statements by Mack after he was taken into custody and before he was given a Miranda warning. The trial court overruled Mack's new trial motion and sentenced him to four years' imprisonment.
Mack timely appealed.
Analysis
Mack argues that the trial court's admission into evidence of his statements to Corporal Hillyard that he had been drinking and there was a beer can in his car violated his privilege against self-incrimination guaranteed under the United States and Missouri Constitutions. See U.S. CONST . amend. V ; MO. CONST . art. I, § 19. Mack contends that his statements were made involuntarily as a result of custodial interrogation before he had been given Miranda warnings.
The Fifth Amendment to the United States Constitution provides in pertinent part that "no person ... shall be compelled in any criminal case to be a witness against himself." Article I, section 19 of the Missouri Constitution provides in pertinent part that "no person shall be compelled to testify against himself in a criminal cause." "[T]he protection against compelled self-incrimination afforded by the state constitution is coextensive with the right recognized in the federal constitution." State v. O'Neal , 392 S.W.3d 556, 566 n.8 (Mo. App. W.D. 2013) (citing State v. Werner , 9 S.W.3d 590, 595 (Mo. banc 2000) ).
However, even if we were to assume arguendo that admitting Mack's statements into evidence violated his constitutional rights, the violation of an accused's Fifth Amendment right against self-incrimination does not require the automatic reversal of a conviction. Chapman v. California , 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Rather, "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Id. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 24, 87 S.Ct. 824. "Under this test, the 'beneficiary of a constitutional error,' the State, must 'prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " State v. Whitfield , 107 S.W.3d 253, 262 (Mo. banc 2003) (quoting Chapman , 386 U.S. at 24, 87 S.Ct. 824 ).
In Arizona v. Fulminante , 499 U.S. 279, 309-11, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court held that the Chapman harmless error rule applies to the admission of an involuntary confession. In situations where the harmless error rule applies, the Supreme Court has repeatedly reaffirmed the principle that "an otherwise valid conviction should not be *34 set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall , 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The State must demonstrate that the challenged evidence did not contribute to the defendant's conviction. Fulminante , 499 U.S. at 296, 111 S.Ct. 1246 (citing Chapman , 386 U.S. at 26, 87 S.Ct. 824 ).
In order to convict a person of DWI, the State must prove beyond a reasonable doubt that the defendant (1) operated a vehicle (2) while in an intoxicated condition. § 577.010.1. "When evidence challenged on constitutional grounds is cumulative of other properly-admitted evidence, the disputed evidence could not have contributed to the defendant's conviction and is harmless beyond a reasonable doubt." State v. Lopez , 128 S.W.3d 195, 202 (Mo. App. S.D. 2004). Here, challenged statements aside, there was overwhelming evidence for the jury to consider and find Mack guilty of DWI:
• The highway patrol received a report that a vehicle matching Mack's vehicle was driving in a careless and imprudent manner. Corporal Hillyard saw Mack's vehicle slow down and stop halfway on the shoulder and halfway in the driving lane of Interstate 35 and then pull back onto the highway and continue northbound.
• When Corporal Hillyard approached the vehicle from the passenger side, he detected the odor of alcohol emanating from the vehicle.
• When Corporal Hillyard asked Mack for his driver's license, Mack gave Corporal Hillyard a credit card and was unwilling or unable to produce a valid driver's license. And, later, Mack provided a false name to Corporal Hillyard when requested.
• When Corporal Hillyard then asked Mack to come back to his patrol car, he observed Mack stumbling and swaying as he walked to the patrol car.
• When Corporal Hillyard asked Mack to perform a preliminary breath test, Mack refused.
• When Mack was in the patrol car, Corporal Hillyard detected the odor of alcohol coming from Mack and noticed that Mack's speech was slurred and his eyes were bloodshot.
• When Corporal Hillyard had Mack perform several field-sobriety tests: Mack had six of six clues on the horizontal gaze nystagmus test and two of two clues on the vertical gaze nystagmus test ; Mack was unable to perform the one-leg stand test successfully; and Mack was unable to perform the walk-and-turn test after multiple attempts.
• Mack's speech was slurred, and he missed several letters and mixed up the order of other letters of the ABCs; Mack's speech was slurred, he counted slowly, and he used his fingers for every number to count backwards from 64 to 48.
• After Corporal Hillyard read Mack the implied consent warning, Mack refused to take a breath test.
"Intoxication may be proven by the defendant's behavior including: loss of balance, slurred speech, lack of body coordination, and impairment of motor reflexes." State v. Royal , 277 S.W.3d 837, 840 (Mo. App. W.D. 2009). "Testimony from any witness who has had a reasonable opportunity to observe this behavior may constitute sufficient proof." Id. "Refusal to take a breathalyzer test is also evidence from which a reasonable inference can be drawn that the driver is intoxicated." Id.
*35 See also State v. Donovan , 539 S.W.3d 57, 66-67 (Mo. App. E.D. 2017) ("Intoxication may be proven by the defendant's behavior including observations made by a trained professional concerning the defendant's motor vehicle operation, the driver's loss of balance, slurred speech, lack of body coordination, and impairment of motor reflexes, or the driver's refusal to take a breathalyzer test[.]" (citations omitted)).
Inasmuch as Mack's statements challenged on constitutional grounds were cumulative to the foregoing properly-admitted and overwhelming evidence, this record demonstrates beyond a reasonable doubt that the error complained of did not contribute to Mack's conviction of DWI. Therefore, even had the trial court erred in admitting the challenged statements in evidence, such error was harmless.[4]
Mack's point on appeal is denied.
Conclusion
The judgment of the trial court is affirmed.
Zel M. Fischer, Special Judge, and Gary D. Witt, Judge, concur.

All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2015 Noncumulative Supplement.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In an appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. State v. Swartz , 517 S.W.3d 40, 46 n.2 (Mo. App. W.D. 2017).

Because we conclude that any error, if at all, was harmless, we need not and do not consider Mack's argument on appeal that his Fifth Amendment privilege against self-incrimination was violated.