

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **CEDRIC DEWAYNE MACK,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD86527** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **NOVEMBER 5, 2024** |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Harrison County, Missouri**
The Honorable Ryan W. Horsman, Judge

Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding, Mark D. Pfeiffer, Judge and Gary D. Witt, Judge

Cedric Dewayne Mack appeals the judgment of the Circuit Court of Harrison County, Missouri ("motion court") denying, after an evidentiary hearing, his motion for post-conviction relief pursuant to Rule 29.15.[1] On appeal, Mack claims that the motion court clearly erred in denying his motion because he established that his trial counsel ("Counsel") was constitutionally ineffective in failing to file a motion to suppress evidence obtained during his arrest because the arresting officer did not have reasonable suspicion to engage in an investigatory stop of Mack's vehicle. Finding no error, we affirm the judgment of the motion court.

---

[1] All Rule references are to the Missouri Supreme Court Rules (2024).

**Factual and Procedural Background**

On October 21, 2016, a Corporal with the Missouri State Highway Patrol ("Corporal")[2] received a call from dispatch that someone had reported a vehicle being driven in a careless and imprudent manner on northbound I-35 in Harrison County. The vehicle was described as silver with black racing stripes and an Iowa license plate. Another call complaining about the same vehicle was received reporting the described vehicle driving erratically and provided a license plate number for the vehicle. Corporal was at a weigh station off of southbound I-35, and shortly after receiving the call from dispatch, he observed a vehicle matching the description heading northbound on I-35. Corporal pulled into the crossover and then proceeded to follow the northbound vehicle. Corporal observed the vehicle "come to a stop on the shoulder and partially in the driving lane, about half and half, and then continue north shortly after it stopped." Corporal neared the vehicle and then activated his emergency lights to pull the vehicle over, which also activated his dash camera.

The vehicle pulled over onto the shoulder, barely clearing the righthand lane of traffic. Corporal approached the passenger side of the vehicle, noticed an odor of alcohol coming from the vehicle, and asked the driver for his license; the driver produced a credit card and handed it to the Corporal. The driver could not produce a driver's license, so Corporal had the driver follow him to his patrol car. Corporal noticed the driver was stumbling on his way to the patrol car. The driver's speech was slurred and there was an

---

[2] Pursuant to section 509.520 RSMo. (2023) we redact the names and any identifying information of all witnesses other than parties.

2

odor of alcohol coming from the driver. The driver initially gave Corporal a name that, when Corporal located driver's license photograph and information, was clearly not the driver. After some time, the driver provided Corporal his real name, Cedric Mack, who had an Iowa driver's license.

Corporal asked Mack to recite the alphabet without singing. Mack missed some letters and followed it with something like, "now I know my ABCs will you sing them to me." Mack was able to count backward from sixty-four to forty-eight, but did so slowly and used his fingers for every number, and he showed all six signs of impairment on the horizontal gaze nystagmus test and exhibited vertical nystagmus on the vertical gaze nystagmus test. Mack refused to take a preliminary breath test. Mack also performed poorly on the one-legged stand test, and he was unable to complete the walk-and-turn test safely.

After Corporal told Mack he was under arrest for driving while intoxicated and Mack gave permission for Corporal to move his car further off of the highway, Mack told Corporal that he had been drinking and that there would be an alcohol container in the vehicle.

Mack was found guilty by a jury and was sentenced by the court as a prior and persistent offender to four years' imprisonment with the Department of Corrections. After Mack's conviction was affirmed, *State v. Mack*, 560 S.W.3d 29 (Mo. App. W.D. 2018), he filed a timely *pro se* motion for post-conviction relief on January 14, 2019. The public defender entered an appearance on behalf of Mack on March 4, 2019. Post-conviction counsel requested an additional thirty days to file the amended motion, but the

3

motion court did not grant the extension until the thirty-day extension period had already passed, so the motion court lacked authority to grant the motion. *See Rutherford v. State*, 192 S.W.3d 746, 749 n.4 (Mo. App. S.D. 2006). Despite the untimeliness of Mack's amended motion, the motion court held an evidentiary hearing on the amended motion and addressed its merits, without making any finding on abandonment by post-conviction counsel, although it ultimately denied the motion. This Court reversed and remanded the case back to the motion court for an inquiry into the abandonment issue. *Mack v. State*, 635 S.W.3d 607 (Mo. App. W.D. 2020). On remand, the motion court held a hearing on the issue of abandonment, found that post-conviction counsel had abandoned Mack, and thus considered Mack's untimely filed amended motion alleging that trial counsel was ineffective in failing to file a motion to suppress the evidence obtained during the traffic stop because Corporal did not have reasonable suspicion to justify the traffic stop based on what Corporal had observed prior to the stop.

After an evidentiary hearing, the motion court made the following factual findings:

> [Corporal] was working the evening shift in Harrison County when he received a call from dispatch describing a silver vehicle with black racing stripes and Iowa license plates driving in a careless and imprudent manner northbound on Interstate 35. [Corporal] saw a vehicle matching that description briefly come to a stop on the shoulder and partially in the driving lane. He saw the vehicle pull back onto the highway and continue northbound. [Corporal] pursued the vehicle and activated his lights after [Mack's] wheels briefly touched the fog line. The vehicle pulled off onto the shoulder of the road.

(Internal transcript cites omitted). The motion court concluded that the calls to police dispatch complaining about the vehicle in conjunction with Mack's "operation of the vehicle weaving within its lane touching the lane boundary lines and pulling over to the

4

side of the road prior to the initiation of [Corporal's] lights is sufficient to establish reasonable suspicion necessary for a 'Terry Stop.'" This appeal follows.

## Standard of Review

"When reviewing the motion court's denial of a post-conviction relief motion, this Court presumes the motion court's ruling is correct." *McIntosh v. State*, 413 S.W.3d 320, 323 (Mo. banc 2013). This Court's review of a trial court's action on a Rule 29.15 motion "shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016) (internal citation omitted). "This court may affirm the judgment on any legal ground supported by the record if the motion court arrived at the correct result." *Greene v. State*, 332 S.W.3d 239, 246 (Mo. App. W.D. 2010). We view the evidence and the reasonable inferences therefrom in the light most favorable to the lower courts' rulings and disregard all evidence and inferences to the contrary. *See State v. Abeln*, 136 S.W.3d 803, 808 (Mo. App. W.D. 2004).

**Analysis**

Mack's single point on appeal[3] argues that Counsel was constitutionally ineffective for failing to move to suppress the evidence derived from Corporal's investigatory stop because Corporal did not have reasonable suspicion that Mack was driving while intoxicated at the time of the stop.

"To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy the two-pronged *Strickland* test." *Jindra v. State*, 580 S.W.3d 635, 641 (Mo. App. W.D. 2019) (citing *Strickland v. Washington*, 466 U.S. 668(1984)). "First, the movant must show counsel failed to perform to the degree of skill, care, and diligence that a reasonably competent attorney would under similar circumstances." *Lindsey v. State*, 633 S.W.3d 547, 551 (Mo. App. W.D. 2021). This requires that the movant show that counsel's representation "fell below an objective standard of reasonableness." *Jindra*, 580 S.W.3d at 641; *Strickland*, 466 U.S. at 688. The movant must then show that he was prejudiced by this failure. *Jindra*, 580 S.W.3d at 641. "Prejudice occurs when 'there is a reasonable probability that, but for counsel's

---

[3] Although Mack raises only one point on appeal, and although the State did not file a cross-appeal, the State's brief has two "points," the first of which is titled Abandonment. The State argues that, because the public defender representing Mack for his post-conviction proceedings was never formally appointed by the motion court, but instead entered an appearance without having been appointed, Mack could not have been abandoned, and thus we should not consider his amended motion. However, the State did not make this argument before the motion court, even though the motion court held a hearing for the sole purpose of determining the issue of abandonment. "Appellate courts do not consider arguments not presented to the circuit court and made for the first time on appeal." *Metzger ex rel. Metzger v. United Servs. Auto. Ass'n*, 694 S.W.3d 128, 133 (Mo. App. W.D. 2024). Accordingly, the motion court's factual finding that Mack was abandoned by post-conviction counsel is not before this court.

6

unprofessional errors, the result of the proceeding would have been different.'" *Id.*
(quoting *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013)). "A movant must
overcome the strong presumption that counsel's conduct was reasonable and effective."
*Id.* "To overcome this presumption, a movant must identify specific acts or omissions of
counsel that, in light of all the circumstances, fell outside the wide range of professional
competent assistance." *Id.* (internal quotations omitted). "Trial strategy decisions may
be a basis for ineffective counsel only if that decision was unreasonable." *Id.*

In this case, Mack had to establish that Counsel's performance was deficient in
failing to file a motion to suppress the evidence against him and that, had she filed the
motion to suppress, there is a reasonable likelihood that the motion would have been
sustained. *See Shumate v. State*, 515 S.W.3d 824, 828-29 (Mo. App. W.D. 2017)
(holding that in order to establish that counsel was ineffective in failing to file a motion to
suppress, the movant must specify the grounds on which the motion to suppress would
have been successful). "The decision as to whether to file a motion to suppress is a
matter of trial strategy and generally will not be questioned in a post-conviction relief
proceeding." *Buckner v. State*, 35 S.W.3d 417, 421 (Mo. App. W.D. 2000). Counsel will
not be found ineffective for failing to file a meritless motion to suppress. *Id.*

"The Fourth Amendment of the United States Constitution guarantees citizens the
right to be free from unreasonable searches and seizures." *State v. Pike*, 162 S.W.3d 464,
472 (Mo. banc 2005) (internal quotation omitted). A brief investigatory stop, such as a
traffic stop, is permissible under the Constitution, as long as the conducting officer has

7

"reasonable suspicion" based on "specific and articulable facts" that illegal activity is occurring or has occurred. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

Mack's argument is that Corporal's stop of Mack was not based upon reasonable suspicion that Mack was driving while intoxicated because the only information Corporal had before the stop occurred was that dispatch had received calls that a car whose description matched Mack's car was driving in a careless and imprudent manner and that Corporal observed Mack's car "briefly touch or come near the fog line two times." This is a mischaracterization of the evidence and ignores our standard of review. First, Mack cites, at length, *State v. Roark* for the proposition that "anonymous tips" called in about reckless driving are insufficient to support reasonable suspicion and must be confirmed by an officer's observations. *See State v. Roark*, 229 S.W.3d 216, 221 (Mo. App. W.D. 2007). *Roark*, however, is neither controlling nor dispositive in this case.

Subsequent to *Roark*, the United States Supreme Court decided *Navarette v. California*, 572 U.S. 393, 400 (2014). In *Navarette*, a woman called 911 to complain about a car that had run her off the road; a police officer located the vehicle a short time later and conducted a traffic stop. *Id.* at 395. The Supreme Court held that the stop was based upon a reasonable suspicion that the driver was intoxicated. *Id.* In finding that the 911 call had a sufficient degree of reliability for the officer to rely upon it, the Court noted that there was no evidence presented to the trial court that the 911 call was, in fact, anonymous. *Id.* at 396 n.1. But the Court went on to say that, even if the call had been anonymous, it "bore adequate indicia of reliability for the officer to credit the caller's account." *Id.* at 398. The Court held that by describing the vehicle, including license

8

plate information, "the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving." *Id.* at 399. The Court also noted that the claim that the driver ran her off the road "necessarily implie[d] that the informant kn[ew] the other car was driven dangerously." *Id.* The Court was also persuaded by the fact that the call was made soon after the caller witnessed the dangerous driving; "That sort of contemporaneous report has long been treated as especially reliable." *Id.* The Court also found that the caller's excitement about the dangerous driving contributed to the caller's reliability. "[A] statement relating to a startling event . . . made while the declarant was under the stress of excitement that it caused" weighed in favor of the caller's veracity. *Id*. at 400 (internal quotation marks omitted). Finally, the Court declared the caller's use of the 911 emergency system was an indicator of veracity because 911 calls can be traced with law enforcement having the ability to verify important information about the caller and the caller's location. *Id.* at 400-01. Accordingly, even without the officer independently verifying dangerous driving, the Supreme Court concluded that the stop in that case was justified based solely on the information given by the caller reporting the dangerous driving and the way in which it was reported.

Similarly here, there was no evidence presented that the two separate and independent callers reporting Mack's dangerous driving were anonymous or had reason to fictitiously report. In this case, two callers reporting dangerous driving in a vehicle whose description matched Mack's car, including license plate information, called police from two different locations along I-35 at some distance from each other—one at the 71 mile marker, and another at the 105 mile marker. This indicates that two drivers were

9

alarmed enough by Mack's driving to call it into police contemporaneously with their having observed his driving. Mack was ultimately stopped by Corporal at the 111 mile marker. This case resembles *Navarette* more closely than it does *Roark*, whose authority arguably comes into question following *Navarette.*

Besides Mack's mischaracterization of the "anonymous tip" calls, Mack also misstates the facts as to Corporal's own observations about Mack's driving. Mack claims that the only thing Corporal observed before the stop was Mack briefly touching the fog line twice. However, Corporal testified that he observed Mack's vehicle "come to a stop on the shoulder and partially in the driving lane, about half and half, and then continue north shortly after it stopped." While Mack's brief implies that this testimony is not credible under the circumstances, this ignores our standard of review. The motion court clearly credited Corporal's account, it is supported by Corporal's discussion with Mack on the dashcam video where Corporal makes a similar statement, and we presume the motion court's findings to be correct. *See Oliphant v. State*, 525 S.W.3d 572, 576 (Mo. App. S.D. 2017). Stopping a vehicle in the lane of traffic on an interstate highway puts the driver and other drivers on the road in great danger. We conclude that the post-*Navarette* consideration of the two calls reporting Mack's dangerous driving, the dashcam video, and Corporal's testimony regarding his own observations of Mack's driving constitute reasonable suspicion that Mack was driving while intoxicated at the time Corporal stopped Mack such that any motion to suppress Counsel could have filed would have been unsuccessful. Thus, Mack fails to establish that Counsel was ineffective in failing to file a meritless motion to suppress.

10

Point I is denied.

## Conclusion

For the above-stated reasons, we affirm the judgment of the motion court.

_____
Gary D. Witt, Judge

All concur

11